## In re MARQUAM INVESTMENT CORP., Debtor.

Bankruptcy No. 388–01488–H07.

United States Bankruptcy Court, D. Oregon.

Dec. 15, 1994.

Charles Robinowitz, Portland, OR, for creditor and for trustee for certain purposes.

Lawrence Erwin, pro se as atty. for debtor.

## OPINION

HENRY L. HESS, Jr., Bankruptcy Judge.

This matter came before the court upon objections to the claims of Charles Robinowitz and Lawrence Erwin. Charles Robinowitz represents Suzan Brewer, a creditor, and represented the trustee for certain purposes when the case was proceeding under chapter 11. Mr. Lawrence Erwin represents himself as attorney for the debtor while the case was pending under chapter 11. The court will also rule on the various motions for imposition of sanctions.

The court will first deal with the objections to the claim of Charles Robinowitz.

### 1. Claim of Charles Robinowitz

Mr. Robinowitz seeks fees and costs under 2 alternative theories: Section 503 and section 327. These theories will be analyzed.

#### a. Sections 503(b)(1), (3) and (4)

■ Mr. Robinowitz seeks compensation under sections 503(b)(1), (3) and (4) and sections 327 and 330 of the Code.[1] The debtor,

---

1. § 503(b)(1)(A) provides in relevant part: "After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—(1)(A) the actual, necessary costs and expenses of preserving the estate...."

§ 503(b)(3)(D) provides: "After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection incurred by—(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 or this title;"

§ 503(b)(4) provides: "After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent and the value of such services, and the

Warde Erwin and Lavelle Mullenex (the objectors) have all raised various objections to Mr. Robinowitz's claim. The objectors argue that section 503(b)(3) requires a creditor to incur an expense other than an attorney fee or expense covered under 503(b)(4) in connection with making a substantial contribution to the estate or in recovering a transfer. The objectors assert that Mr. Robinowitz's client, Suzan Brewer, did not incur any such expense and that Ms. Brewer has not proven that she incurred any expense other than an expense of the kind described in section 503(b)(4). Thus, according to the objectors, none of Mr. Robinowitz's fees can be recovered from the estate under section 503(b)(4).

One reading of sections 503(b)(3) and (4) supports the objectors' position. Section 503(b)(3) refers to a creditor who incurred an expense other than an expense of the kind referred to in section 503(b)(4) in connection with making a substantial contribution to the estate. The objectors assert that before attorney fees can be awarded under section 503(b)(4) to the attorney who acted on behalf of a creditor, it must appear that an expense allowable under section 503(b)(3) was incurred by the creditor. All of Mr. Robinowitz's fees and all of the expenses detailed in his applications are covered by section 503(b)(4). Thus, under the objectors' reading of sections 503(b)(3) and (4), whether or not Ms. Brewer's and Mr. Robinowitz's efforts have made a "substantial contribution," Mr. Robinowitz's fees and expenses could not be allowed under section 503(b)(4) because Ms. Brewer had no expenses allowable under section 503(b)(3).

The court does not agree with this reading of sections 503(b)(3) and (4). Rather, the court believes that section 503(b)(4)'s reference to "an entity whose expense is allowable under paragraph (3) of this subsection" is merely intended to identify the entity in question and not to limit compensation only to those professionals who rendered services to an entity which actually incurred an expense. One problem with the objectors' reading of these statutes is that an entity/creditor would only need to incur a nominal expense such as the cost of a stamp, for example, to be entitled to have all its related attorneys fees and expenses compensated. Also, the objectors' reading of the statute would allow compensation where the creditor and its attorney's retainer agreement required the creditor to pay all litigation costs as they were incurred but would disallow compensation where the attorney advanced the costs with the understanding that he would be reimbursed by the creditor. Such an arbitrary and illogical reading of the statute is not necessary. The court concludes that even if Ms. Brewer may not have directly incurred any costs, section 503(b)(3) does not preclude an award under section 503(b)(4) in this case. The court must now decide whether Ms. Brewer has made a "substantial contribution" to this case.

i. Claims litigation

The court believes that the successful litigation by Mr. Robinowitz on behalf of Ms. Brewer (and the trustee) pursuing objections to claims constitutes a significant contribution to the estate under section 503(b)(3). This litigation reduced the claims against the estate by disallowing invalid claims and increased the estate's "net worth" permitting a larger distribution to creditors holding al-

cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;"

§ 327(a) provides: "Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."

§ 330(a) provides: "After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtors attorney—(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and (2) reimbursement for actual, necessary expenses."

lowed claims. The fees for successful claims objections are described as follows:

A. Erwin and Erwin, P.C. claim

Mr. Robinowitz seeks $48,190 in attorney fees for objecting to this claim. Mr. Robinowitz's efforts eliminated a $120,000 claim by Erwin and Erwin, P.C. against the debtor's estate.

B. Lavelle Mullenex wage claim

Mr. Robinowitz seeks an award of $75 for successfully objecting to the $27,900 pre petition wage claim of Lavelle Mullenex.

C. Lavelle Mullenex and Warde Erwin's indemnity claims

Mr. Robinowitz seeks $7,400 for successfully defeating these claims totalling $29,435.

D. A portion of Lawrence Erwin's pre-petition claim

Mr. Robinowitz seeks $4,500 for successfully reducing this claim from $9,269.18 to $4,000.

E. Other claims

Mr. Robinowitz requests $2,500 for litigating, in the adversary proceeding, on behalf of the trustee the following:

1. The right to interest on loan claims by Warde Erwin and Lavelle Mullenex;

2. A claim for subordination of the Erwin and Erwin claim;

3. The debtor's indemnification claims against Warde Erwin and Lavelle Mullenex;

4. A claim for unpaid rent by the corporation against Erwin and Erwin, P.C.

All of these matters were pursued as a part of the adversary proceeding. Issue numbers 2 and 3 became moot when the claim of Erwin and Erwin, P.C. was ultimately disallowed while number 4 was moot when the lease was avoided. Mr. Robinowitz was unsuccessful on issue number 1. Although some of these issues ultimately became moot, the court believes they are compensable under the "business judgment" rule discussed below with respect to section 327.

ii. Lease avoidance action

The successful effort to set aside a lease agreement was also a significant contribution to the estate and the fees and costs therefore should be compensated. The work performed by Mr. Robinowitz in setting aside the lease was specifically authorized under section 327 and the fees therefor will be allowed thereunder as discussed below. It may be useful to note, however, that the court believes this work resulted in a significant contribution and would be compensable under sections 503(b)(3) and (4) if sections 327 and 330 were not available. Thus, the costs and fees related to this work, including the costs of any experts employed to further this action but whose employment was not approved in advance under section 327, are compensable under section 503(b)(4).

iii. Objection to confirmation

Mr. Robinowitz also seeks fees and costs for objecting to confirmation of the chapter 11 plan. This action was not within the scope of his employment by the trustee as discussed below and therefore cannot be compensated under sections 327 and 330. While this effort was successful, the court believes it did not result in a significant contribution to the estate as required by sections 503(b)(3) and (4). The debtor's plan was to sell the property and pay creditors. After the objection to confirmation of that plan was successful, the case was converted to one under chapter 7 and the property was sold and creditors will be paid. It seems that the objection and subsequent conversion only delayed the sale. Mr. Robinowitz's arguments that the sale contemplated by the debtor under the plan was part of a plot to defraud creditors is not persuasive as discussed below. Therefore, the fees of $750 and costs related to the objection to confirmation will not be allowed.

iv. Fees related to "frivolous" appeal to 9th Circuit

These fees will not be allowed for the reasons discussed below under the same heading.

### b. Sections 327 and 330

■ As an alternative basis for allowance of his fees, Mr. Robinowitz argues that much of his work was done pursuant to an order of the court appointing him to represent the trustee. Thus, he argues, pursuant to sections 327 and 330 of the Code, he is entitled to reasonable compensation for such work. In the event the court's ruling on section 503(b)(3) and (4) is upset on appeal, it will be useful to analyze this alternative theory of recovery.

#### i. Claims litigation

The objectors point out that the order appointing Mr. Robinowitz to represent the trustee arose in an adversary proceeding that ultimately dealt with the avoidance of an alleged fraudulent conveyance. The bulk of Mr. Robinowitz's fees were incurred in defeating the claims of Erwin and Erwin, P.C. and others. The claims litigation occurred in the main case in the normal claims-objection process. Since Mr. Robinowitz was only appointed to represent the trustee in the adversary proceeding, the objectors argue that Mr. Robinowitz is not entitled to any fees for objecting to claims in the main case.

The problem with the objectors' argument is that it ignores the scope of the adversary proceeding at the time the order appointing Mr. Robinowitz was entered. The complaint in the adversary proceeding was filed on April 3, 1985 by the trustee's attorney at that time, Mr. John Durkheimer. The original complaint included, in count I of the first claim for relief, objections to the claims of Erwin, Lamb and Erwin, P.C. (now known as Erwin and Erwin, P.C.), Warde Erwin, Lavelle Mullenex and Lawrence Erwin.

On June 13, 1985, the court entered an order allowing Mr. Durkheimer to withdraw and appointing Mr. Robinowitz to represent the trustee in the adversary proceeding. At that time, the complaint included the objections to the claims mentioned above.

Later, on June 24, 1985, Mr. Robinowitz filed an amended complaint on behalf of the trustee. The amended complaint continued the effort to disallow the claims mentioned above. On December 18, 1985 a second amended complaint was filed by Mr. Robinowitz on behalf of the trustee. This complaint was filed without leave of court and continued the previously asserted objections to claims except that it did not seek disallowance of the pre petition claim of Mr. Lawrence Erwin.

On January 10, 1986, the court entered an order allowing the filing of the second amended complaint with certain exceptions. The order of January 10, 1986 was in the nature of an order striking certain parts of the second amended complaint. In relevant part, the stricken portions of the complaint dealt with the language therein seeking disallowance of claims. The court's order striking these portions of the complaint was appropriate since objections to claims are contested matters rather than adversary proceedings. See FRBP 9014 and 7001.

At the time the order to strike various parts of the complaint was entered, however, it was not the court's intention to alter in any way the scope of Mr. Robinowitz's appointment. The court was fully aware that Mr. Robinowitz was continuing to pursue the claims litigation on behalf of the trustee. If anyone had thought it necessary to seek another order appointing Mr. Robinowitz to represent the trustee for this purpose, the court would have entered such an order.

The reclassification of a matter as a contested matter rather than an adversary proceeding does not control the outcome in this issue. The purpose of section 327's requirements is to avoid "volunteerism" and to allow the court to control the administrative expenses in a case. See Collier on Bankruptcy 15th Ed., p. 327–12 at ¶ 327.02. These purposes were fully met in this case. Mr. Robinowitz sought and obtained a court order authorizing his employment for the purposes described in the complaint. This is sufficient. It would be highly inequitable to deny Mr. Robinowitz compensation for this work because the court later entered a "housekeeping" order that re-characterized certain issues as contested matters rather than adversary proceedings but which had no substantive impact on the issues presented.

Thus, the court concludes that Mr. Robinowitz is entitled to compensation under sec-

tions 327 and 330, as well as sections 503(b)(3) and (4), for all the work he performed within the scope of his employment as defined by the complaint that existed as of the date of his employment. These issues include the avoidance of the lease between Erwin and Erwin, P.C. and the debtor and the objections to the claims of Erwin and Erwin, P.C., Warde Erwin and Lavelle Mullenex. Since objections to the pre petition claim of Lawrence Erwin were stricken from the second amended complaint, such work should not be compensated under sections 327 and 330 (although it is compensable under section 503(b)(4) as discussed above).

■ Next, the objectors argue that Mr. Robinowitz was not "disinterested" as required by section 327 and should therefore not be entitled to compensation. The basis for this argument is that Mr. Robinowitz represents a creditor of the estate and is therefore disqualified from representing the trustee. The court disagrees. The limited scope of Mr. Robinowitz's employment by the trustee resolves this issue. Mr. Robinowitz represented the trustee in all matters that were raised in the adversary proceeding. As just discussed, those matters only involved objecting to the claims of other creditors and avoiding a transfer. None of these matters involves any conflict. Ms. Brewer's interest was in seeing that invalid claims were disallowed and that estate assets were maximized. This is exactly what the trustee was seeking to do and was the reason the court authorized Mr. Robinowitz's employment in the first place.

The fact that Mr. Robinowitz was authorized to pursue claims litigation and the lease avoidance action did not insulate Ms. Brewer's claim from attack by the trustee or others. Given the nature of Mr. Robinowitz's employment, there simply was no disqualifying interest as contemplated in section 327.

The objectors have not objected to any specific item in the work identified as relating to the objections to the claims described above. The court is not aware of any irregularities in this regard and would, if section 503 were unavailing, therefore allow under section 327 the entire request except for the fees and costs related to the objection to the pre petition claim of Lawrence Erwin.

### ii. Lease avoidance litigation

■ The objectors note that Mr. Robinowitz seeks an award of $10,000 in fees for litigating the fraudulent conveyance action, the net effect of which action, according to the objectors, was to bring $8,000 into the estate. This, they argue, is inappropriate.

The court does not agree. At the time this issue was raised, there were concerns by the trustee that the existence of a lease at less than the market rate would be an impediment to sale of the property at a fair price. The extent of this potential impediment was difficult to calculate.

Also, at the outset, the trustee's contention was that the lease was far below market and it was possible that the action would result in a much greater return to the estate. The fact that the matter was ultimately settled for $8,000 does not answer the question. If all such litigation were judged with the benefit of hindsight, attorneys might be very reluctant to pursue litigation on behalf of the estate. While some dubious litigation would be prevented, a great deal of meritorious claims might be lost. The court does not wish to place this kind of impediment on trustees and attorneys in making a determination of the reasonableness of fees.

Rather, it seems appropriate to adopt a "business judgment" rule and ask whether the trustee's decision to pursue the litigation was within the scope of reasonable business judgment. The court believes it was reasonable to pursue the litigation given the factors discussed above and will not reduce the fee request on the ground that the recovery was too small compared to the fee. Thus, it appears that Mr. Robinowitz is entitled to fees of $10,000 for the work in the adversary proceeding.

### iii. Fees related to "frivolous" appeal to 9th Circuit

■ Finally, with respect to attorney fees and costs, Mr. Robinowitz seeks an award of $5058.75 in fees from the estate for successfully defending a so-called frivolous

appeal by Erwin and Erwin, P.C. to the 9th Circuit Court of Appeals. The 9th Circuit imposed sanctions against the law firm of Erwin and Erwin, P.C. in the amount of $5058.75 for pursuing the appeal and this is the amount Mr. Robinowitz now seeks. This request is not appropriate. The attorney fee award in favor of Brewer was imposed against a creditor of this estate for pursuing an appeal. The debtor was not responsible for the taking of the appeal. It is not appropriate for the estate to pay for the actions of a creditor. Any such satisfaction should come from the assets of the party against whom the sanction was imposed and not from the assets of the debtor's estate.

iv. Costs

The remaining issue is the appropriate award of costs and expenses relating to the compensable items. The only non compensable [under both sections 503(b)(4) and 327] work by Mr. Robinowitz was $750 for objecting to confirmation. Any costs related to this work would also be non-compensable. The application itemizing the expenses, however, does not indicate which expenses relate to which services. Since Mr. Robinowitz's position was that he was entitled to fees and costs for all work, it was not necessary for him to make an effort at delineating these costs at the time he prepared and filed the application. Thus, the court will enter an order granting Mr. Robinowitz time to file an itemization which identifies which costs relate to the objection to confirmation. If he fails to file such an itemization, the costs will be disallowed in full.

**2. Post Petition Claim of Lawrence Erwin as attorney for debtor**

On March 25, 1988 the court entered an interim order allowing Lawrence Erwin $4,000 in administrative fees and $495.50 in administrative expenses. Lawrence Erwin later filed an application for compensation in the amount of $15,991.08 for services as the debtor's attorney in the chapter 11 case. The application includes the $4,000 previously awarded, seeks an additional $3,953.94 for fees related to an appeal of an award of fees to Mr. Robinowitz, and $7,541.64 for services performed after the $4,000 award on March 25, 1988.

Mr. Robinowitz objects to the fee application as follows:

a. $4,000 prior award

Mr. Robinowitz argues that the bankruptcy was a sham and part of a scheme to prevent Ms. Brewer from collecting. Finally Mr. Robinowitz argues that: "This court, as a court of equity, should reconsider the $4,000 it originally allowed to Lawrence W. Erwin and set it aside." Objection to Application for Compensation by Lawrence W. Erwin, docketed June 9, 1993, p. 3. The court's prior order is now res judicata and cannot now be set aside except under FRBP 9024. This court finds no legal basis in the objection upon which to set aside the prior order.

b. $3,953.94 for Appeal of Robinowitz Fee

Mr. Robinowitz argues that the appeal of this court's interim award to Mr. Robinowitz under section 503(b)(3) and (4) was of no benefit to the estate. Even though the appeal resulted in the reversal of this court's fee award, Mr. Robinowitz points out that the fee award to Mr. Robinowitz was disallowed with leave to him to reapply. Since Mr. Robinowitz has reapplied for fees, he argues the appeal accomplished nothing and Mr. Lawrence Erwin's work therein should not be compensated.

The bases for the appeal by the debtor of this court's order allowing Mr. Robinowitz's fees was that Mr. Robinowitz was not entitled to fees since he is not disinterested as required by sections 327 and 328 and that he was not entitled to fees under section 503(b)(3) and (4) as discussed above. Although this court disagrees with the debtor's position, this court's order was reversed by Judge Marsh of the U.S. District Court. Judge Marsh's judgment in USDC Civil No. 88–816–MA dated October 14, 1988 reads, in full, as follows:

"IT IS ORDERED AND ADJUDGED Judge Hess's order allowing administrative expenses is REVERSED. Deft [sic probably "Defendant" is intended] has leave to

resubmit administrative expenses to Hudge [sic "Judge" intended] Hess under the correct statutory provision."

The basis for the reversal is not at all clear since Judge Marsh did not enter an opinion explaining his ruling. Although the court does not agree with the debtor's position or Judge Marsh's ruling on this issue, it does not necessarily follow that the debtor's position was without merit. Apparently Judge Marsh found some merit in the argument and this court understands that sections 503(b)(3) and (4) could be read in the manner proposed by the debtor. Thus, the court can see no reason to disallow the fees for such work.

c. $7,541.64 fees incurred since 3-25-88 award

 Mr. Robinowitz argues that these services were actually performed for the benefit of Warde Erwin and Charles Erwin and not the estate. Since the debtor did not ultimately reorganize in chapter 11 and the case was eventually converted to chapter 7, Mr. Robinowitz concludes that all of Mr. Lawrence Erwin's services were of no benefit to the estate.

The problem with this argument is that Mr. Robinowitz failed to point to any item in Mr. Lawrence Erwin's application that was inappropriate. With one exception that will be discussed next, none of Mr. Lawrence Erwin's work was identified as being work that was performed for the benefit of someone other than the debtor. The court cannot simply assume this allegation is true without some evidence to support the allegation.

Apparently Mr. Robinowitz believes that the fact that Mr. Lawrence Erwin is related to one of the debtor's shareholders, Mr. Warde Erwin, and is related to both principals of Erwin and Erwin, P.C., is sufficient for the court to conclude that all of Mr. Lawrence Erwin's legal efforts as counsel for the debtor were not performed with the debtor's best interests in mind. Mr. Robinowitz, however, failed to offer any credible evidence to support this position. The only effort to specify work that was performed by Mr. Lawrence Erwin that was not intended to benefit the debtor was Mr. Robinowitz's

testimony that Mr. Lawrence Erwin attempted to arrange a sale of the corporate realty for less than market value to an individual whom Mr. Robinowitz suspected might be a straw man acting for the Erwins. This testimony was refuted by testimony from Mr. Lawrence Erwin and Mr. Charles Erwin. Mr. Lawrence Erwin testified that his legal efforts in regard to the offer to purchase were simply routine efforts to entertain, consider and disseminate information about the offer.

Mr. Robinowitz offered nothing further at the hearing with respect to this specific allegation of collusion and nothing further on his general assertion that Mr. Lawrence Erwin's work was intended to benefit his relatives at the expense of the debtor. It would have been very significant if Mr. Robinowitz had produced the alleged straw man to testify or some evidence of his identity and relationship with the Erwins. This did not occur, however, and the complete lack of credible evidence on this point strongly suggests that Mr. Robinowitz's suspicions were unfounded. Certainly, such suspicions do not come anywhere near establishing that Mr. Lawrence Erwin and others conspired to defraud the court and creditors in the manner alleged by Mr. Robinowitz.

While it is true that the case ultimately was converted to one under chapter 7 where the sole asset was sold, this was what the debtor's plan of reorganization called for. It therefore seems incorrect to conclude that none of Mr. Lawrence Erwin's services in attempting to achieve this goal should be compensated.

In sum, Mr. Robinowitz did not point to any single service performed by Mr. Lawrence Erwin and charged to the debtor that was inappropriate and the court must therefore approve his fee application as attorney for the debtor.

## 3. Sanctions

Mr. Warde Erwin has suggested that sanctions be imposed against Mr. Robinowitz for signing various pleadings in violation of FRBP 9011. Mr. Robinowitz has requested that sanctions be imposed against Erwin and Erwin, P.C., Mr. Warde Erwin and Mr.

Charles Erwin for signing and asserting a fraudulent claim.

### a. Sanctions against Mr. Robinowitz

■ This court has not always ruled in favor of Mr. Robinowitz's positions in this case. On the other hand, Mr. Robinowitz has been successful in appealing some of this court's rulings. Given the incredibly long and tortured path of the litigation between these parties, it is extremely difficult for this court to review all the actions of the parties over the past 11 and ½ years in this case and conclude that Mr. Robinowitz acted so improperly as to warrant imposing sanctions. The court declines to do so and will not impose sanctions against Mr. Robinowitz.

### b. Sanctions against Mr. Warde Erwin

■ Mr. Robinowitz alleges that Mr. Warde Erwin filed a fraudulent proof of claim in this case when he signed and filed a $120,000 claim on behalf of Erwin and Erwin, P.C. The claim was based on legal services performed by the law firm of Erwin and Erwin, P.C. for the debtor, Marquam Investment Corporation. This claim was ultimately disallowed by the 9th Circuit Court of Appeals in part on the ground that this court erroneously concluded that the debtor had entered into an express contract with the law firm to pay for the legal services based solely on implausible testimony from Charles Erwin. The 9th Circuit's ruling forms the basis for Mr. Robinowitz's assertion that the claim was fraudulent.

This court has great difficulty with this argument. When the trustee's objection to this claim was litigated, this author was the presiding judge. After a trial, this author ruled from the bench that the claim was valid. The factual basis for this ruling was that:

1. The law firm's members performed valuable legal services for the debtor corporation; and

2. The law firm intended to be paid for these services; and

3. The fact that these services were being performed with the intent to be paid therefor was known to the corporate officers and the benefits thereof were accepted by the corporation without objection.

Based on these findings by this author, the author applied a doctrine which he learned as a first year law student called "quasi-contract" sometimes also known as a "contract implied at law" or "quantum meruit." The classic example of this doctrine is the case of the paper boy who mistakenly delivers a newspaper to a non-subscriber's home every day for a month. The non-subscriber accepts and reads the paper every day knowing of the mistake but says nothing. When the paper boy comes by at the end of the month to collect for the paper, the law will not allow the non-subscriber to avoid payment. Although there is no express contract, oral or written, between the paper boy and the non-subscriber, the law will imply one. In such a situation, the non-subscriber is liable for the reasonable value of the goods or services received.

This was the legal basis for this court's ruling allowing the claim of Erwin and Erwin, P.C. On appeal to the U.S. District Court, the court reversed this court's order allowing the claim. Then, the party who had won at the trial court, the claimant, appealed the matter to the 9th Circuit Court of Appeals in an effort to reinstate this court's ruling. At the 9th Circuit, the court affirmed the US District Court's ruling. In addition, however, the authors of the opinion by the 9th Circuit Court of Appeals misinterpreted this court's basis for its ruling. In its opinion, the panel wrote, in relevant parts:

> "[O]ur independent review of the record before the bankruptcy court has convinced us that the bankruptcy court clearly erred in finding that Marquam agreed to pay the Erwin law firm for any legal services." *In re Marquam Investment Corp.*, 942 F.2d 1462, 1463 (9th Cir.1991).

> "The bankruptcy court did not expressly place the burden on the Erwin law firm to prove that it entered into an agreement in good faith with Marquam for legal services." *Id.* at 1465–66.

> "No evidence was presented of any corporate minutes reflecting the decision to enter into an agreement with the Erwin law firm for legal services." *Id.* at 1466.

"[T]he bankruptcy court was mistaken in finding that the Marquam Investment Corporation entered into a contract to pay the Erwin law firm for its legal services." *Id.* at 1463.

"The bankruptcy court's reasoning can be summarized as follows:

A lawyer is entitled to payment for legal services performed pursuant to an agreement with a bankruptcy corporation.

Charles Erwin did not intend to donate his legal services to the Marquam Investment Corporation.

Therefore, the Marquam Investment Corporation promised to pay Charles Erwin for his services.

This flawed syllogism not only defies elementary precepts of logic, it violates fundamental principles of contract law that require mutuality of assent, and ignores the burden placed upon an insider to prove that the debt resulted from an arm's length transaction that can withstand rigorous scrutiny." *Id.* at 1466.

"Time slips were attached to the Erwin law firm's amended claim filed in 1986." *Id.* at 1463.

2. Even if the 9th Circuit panel had understood the legal basis for this court's ruling, it does not necessarily follow that it would have affirmed this court's ruling. The 9th Circuit panel reversed this court's factual finding that Charles Erwin did not intend to donate his services. The panel held that this finding was "clearly erroneous."

In reaching the conclusion that Charles Erwin did not intend to donate his services, this court relied upon the following:
1. Mr. Charles Erwin's testimony that he did not intend to donate $120,000 of his time;
2. Mr. Charles Erwin was not a shareholder in the corporation for whose benefit the services were performed;
3. Mr. Charles Erwin's uncontested testimony that he was a new lawyer who had a family to support and could not afford to donate this amount of time;
4. There was a non-insider member of the law firm, a Mr. Lamb, who would not benefit from the donation of the services;
5. Mr. Charles Erwin kept time records for all his services.
Apparently, the 9th Circuit panel felt that these facts did not meet the heightened burden of proof imposed upon the claimant by virtue of Mr. Erwin's "insider" status. *Id.* at 1465.

These quotes demonstrate that the 9th Circuit panel misunderstood the syllogism relied upon by this author in making the ruling in question and the legal basis therefore. Also, while the 9th Circuit's opinion correctly recites that time slips were kept by Charles Erwin, this fact is never again alluded to in the opinion yet was an important basis for this court's finding that Mr. Charles Erwin did not intend to donate his services. This court felt it persuasive evidence of intent to be paid for the services that the attorney kept time records of his services.

The authors of the 9th Circuit's opinion were also apparently unaware of the fundamental legal concept of "quasi-contract" as discussed above so as to correctly interpret and reiterate this court's orally stated syllogism. Had the authors been familiar with the concept, they might not have misinterpreted the basis for this court's ruling.[2]

On the basis of its finding that the claim was not valid, the 9th Circuit Court of Appeals imposed sanctions against the appellant for what it considered a frivolous appeal.[3] *Brewer v. Erwin and Erwin, P.C.*, 959 F.2d 800 (9th Cir.1992).

As discussed in the body of this opinion, the law of implied contracts requires that the person performing the services intends to be paid for them. Given the panel's factual determination that Mr. Erwin intended to donate his services, there would be no basis upon which to imply a contract.
Although the panel might have reversed this court's ruling even if it had understood the legal basis therefor, it seems unlikely that it would have found the appeal frivolous. Since there was substantial evidence to support the contention that the law firm's members intended to be paid, and since the law allows recovery under such circumstances, it was not improper for the law firm to pursue collection of the claim against the estate. Further, given that this court ruled in favor of the law firm, it seems completely reasonable for the law firm to attempt to reinstate the trial court ruling on appeal. Thus, the panel's imposition of sanctions against the law firm was inappropriate and it would compound the error and injustice for this court to again impose sanctions against the claimant for filing a claim in this case.

3. This may be the first time a party who prevailed in the trial court has been sanctioned for attempting to reinstate the trial court's judgment on appeal.

 

Given this background, this court cannot conclude that the claim was fraudulent as asserted by Mr. Robinowitz. It is possible that an appellate court could find this court's prior findings of fact on this issue to be clearly erroneous and reverse the court again with respect to this motion for sanctions. Given the misinterpretations and misunderstandings by the 9th Circuit panel of this court's reasoning and actions in this matter, however, it seems entirely inappropriate to again impose sanctions. This time, if this issue is appealed and the basis for this court's earlier ruling is understood, an appellate court may recognize that there was evidence to support the claimant's position and find that the position was not frivolous. Obviously, this court did not and does not find it to have been a frivolously or fraudulently filed claim.

In sum, the court will not impose sanctions against Mr. Warde Erwin as requested by Mr. Robinowitz.

### c. Sanctions against Erwin and Erwin, P.C.

For the reasons just described, the court will not impose sanctions against Erwin and Erwin, P.C.

### d. Sanctions against Mr. Charles Erwin

 In addition to the reasons just given, the court will not impose sanctions against Mr. Charles Erwin for filing a fraudulent claim since he did not sign the claim. Federal Rule of Bankruptcy Procedure 9011 requires that a pleading be signed by an individual before the court can impose sanctions against the individual. The claim in question was signed only by Mr. Warde Erwin.

SUMMARY

In conclusion, the claim of Charles Robinowitz will be allowed in the amount of $72,-665 representing his allowed attorney fees. The allowable costs for Mr. Robinowitz cannot be determined at this time. The administrative claim of Mr. Lawrence Erwin will be allowed in the amount of $11,495.58 in addition to the prior $4,000 award which will not be set aside. The motions for sanctions

will all be denied. The court will enter an appropriate order.