**In re SEDONA INSTITUTE, an Arizona non-profit corporation, Debtor.**

**In re SEDONA SELF REALIZATION GROUP, an Arizona non-profit corporation, Debtor.**

**The LAW OFFICES OF NEIL VINCENT WAKE, Appellant,**

**v.**

**SEDONA INSTITUTE and Sedona Self Realization Group, Appellees.**

BAP No. AZ–97–1258–BoMR.
Bankruptcy Nos. 92–08152–PHX–RTB, 93–02133–PHX–RTB.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 20, 1997.

Decided March 19, 1998.

Terry A. Dake, Phoenix, AZ, for Law Offices of Neil Vincent Wake.

Thomas E. Littler, Warnicke & Littler, Phoenix, AZ, for Sedona Institute, et al.

Before: BOWIE [1], RUSSELL and MEYERS, Bankruptcy Judges.

## OPINION

BOWIE, Bankruptcy Judge.

### I

Appellant, as co-counsel for certain creditors, moved the bankruptcy court for appointment of a trustee or an examiner with expanded powers. After much contest the court appointed a traditional examiner.

Appellant then moved the court under Bankruptcy Code § 503(b)(4) for an award of the attorney's fees incurred in obtaining the appointment of the examiner.[2] The court denied the motion (and the motion for reconsideration) on the ground that fees could not be granted under § 503(b)(4) unless the creditor had an independent expense, beyond the attorney's fees, allowable under § 503(b)(3).

We conclude that the bankruptcy court misapplied Bankruptcy Code § 503(b); a creditor who provides a substantial benefit in a case need not incur an expense other than

attorney's fees as a prerequisite to an award of such fees and costs under § 503(b)(4). We reverse and remand to the bankruptcy court for a determination of: 1) whether the attorney's fees of Appellant were an obligation and expense owed by those creditors in the first place (i.e., whether the creditors would ever be liable for the fees); 2) whether Appellant's clients made, through Appellant, a substantial contribution in the case; and if so, 3) what portion of the fees sought are reasonable and related to producing the substantial contribution.

### II

### FACTS

In 1992, Sedona Institute filed a voluntary petition under Chapter 11. In March 1993, Sedona Institute was joined in bankruptcy by Sedona Self Realization Group (collectively "Debtors").

Appellant, the Law Offices of Neil Vincent Wake ("Appellant"), is a real estate and commercial litigator who, along with general bankruptcy counsel, Joseph C. McDaniel of McDaniel & Gan, P.C. and Dwight Flicker of Howard, Lewis & Peterson, represented 29 creditors of the jointly administered estate of the Debtors. On April 20, 1993, Appellant, Flicker and McDaniel moved, in the name of the 29 creditors, for the appointment of an examiner with significantly expanded powers. On May 23, 1993, Appellant and co-counsel changed the motion to one for a trustee. After a hearing the bankruptcy court appointed a standard examiner.

On January 18, 1994, Appellant filed an application for an award of the fees it incurred in moving for the examiner ("Application"). A hearing on the Application was held nearly three years later on January 15, 1997 (after the plan had been confirmed and other matters had been resolved).

On January 29, 1997, the bankruptcy court entered a minute order denying the Application ("Minute Order"). The court found that none of the creditors represented by Appel-

---

1. Honorable Peter W. Bowie, Bankruptcy Judge for the Southern District of California, sitting by designation.

2. Unless otherwise indicated, all reference to the Code or separate sections are to Title 11 of the United States Code.

lant had incurred an allowable expense under § 503(b)(3) and, thus, as a matter of law they were not entitled to recover attorney's fees or expenses under § 503(b)(4).

On or about February 19, 1997, Appellant filed a motion to reconsider ("Motion to Reconsider"). Appellant argued that the court erred as a matter of law in holding that a claim for attorney's fees under § 503(b)(4) is contingent upon an independent allowable expense under § 503(b)(3). Appellant also pared down the items in the Application for which reimbursement was sought.

On February 24, 1997, the court entered an order denying the Application for "good cause appearing therefore as stated in the minute entry dated January 29, 1997."

On March 5, 1997, Appellant reasserted the Motion for Reconsideration. A hearing was held on March 12, 1997. At the hearing the court elaborated on the grounds for denying the Application, making it very clear that the ruling was based upon the legal conclusion that a claim for attorney's fees under § 503(b)(4) is contingent upon an independent allowable expense under § 503(b)(3).

On March 19, 1997, the court entered the final order denying the Motion for Reconsideration without stating any specific grounds.

Appellant appeals from the order denying the Application and from the order denying the Motion for Reconsideration.

### III

### ISSUES PRESENTED

In the Minute Order the court stated that the Application was denied on alternative grounds: that as a matter of law fees could not be granted under § 503(b)(4) unless the creditor had an independent expense under § 503(b)(3), and that there was no substantial contribution to the estate. Appellant's notice of appeal simply states that it appeals the order denying the Application and the order denying the Motion for Reconsideration. In the Motion for Reconsideration, however, the appellant raised only the first ground. The court was not asked to reconsider the purported finding of lack of substantial contribution.

Appellant does not discuss the issue of substantial contribution in his brief. The BAP has recently reaffirmed the position that an issue not briefed is deemed waived. *In re Jodoin*, 209 B.R. 132, 143 (9th Cir. BAP 1997):

We "will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief." *Miller v. Fairchild Indus.*, 797 F.2d 727, 738 (9th Cir.1986); *see also Meehan v. County of Los Angeles*, 856 F.2d 102, 105 n. 1 (9th Cir.1988) (issue not briefed by a party is deemed waived). Because of Defendant's waiver, we decline to consider this issue on appeal.

In *Jodoin* the appellant included the issue in his statement of issues but not in his brief. In the present case, Appellant did not even include the "substantial contribution" finding as an issue. *See also Martinez–Serrano v. I.N.S.*, 94 F.3d 1256, 1259 (9th Cir.1996) (issue not briefed deemed waived), *cert. denied*, — U.S. —, 118 S.Ct. 49, 139 L.Ed.2d 15 (1997). Indeed, Appellee contends that the legal issue of the proper interpretation of § 503(b) need not be decided because the substantial contribution issue has not been preserved for appeal.

After having reviewed the Minute Order and the transcript of the hearing on the Motion for Reconsideration, we conclude that the bankruptcy court did not in fact make a finding that there was no substantial contribution. While the court stated in the Minute Order that it found no substantial contribution, the explanation which follows indicates that the actual finding was that the Application was overly broad. At the hearing on the Motion for Reconsideration the court focused exclusively on the § 503(b) legal issue. Counsel for the Debtors attempted to clarify that the Motion for Reconsideration should be denied on the alternative ground that the Appellant did not provide substantial contribution. However, the court maintained its focus on the § 503(b) issue, concluding:

THE COURT: All right. For the reasons stated, I'm going to deny the motion to reconsider. And I think I can do that as a matter of law, because, as I read § 503(b)(3) and (4), Mr. Wake doesn't meet

the initial test that having a creditor who's got an allowable claim under § 503(b)(3) and, therefore, as a matter of law, I don't think I can award him professional compensation or the entity slash creditors he represented reimbursement for their professional compensation....

We conclude that the basis for the bankruptcy court's rulings on the Application and the Motion for Reconsideration was the legal issue of whether attorney's fees can be recovered under § 503(b)(4) where the creditor incurring such fees has no other allowable expense under § 503(b)(3). This is the issue before this Panel.

## IV

### STANDARDS OF REVIEW

The bankruptcy court's findings of fact are reviewed under the "clearly erroneous" standard while conclusions of law are reviewed *de novo.* *In re A & C Properties,* 784 F.2d 1377, 1380 (9th Cir.1986), *cert. denied, Martin v. Robinson,* 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986). The issue of whether attorney's fees can be recovered under § 503(b)(4) where the creditor incurring such fees has no independent expense under § 503(b)(3) is an issue of statutory interpretation. We review the bankruptcy court's interpretation of the Bankruptcy Code *de novo.* *In re Harrell,* 73 F.3d 218, 219 (9th Cir.1996); *In re Than,* 215 B.R. 430, 433 (9th Cir. BAP 1997).

## V

### DISCUSSION

The bankruptcy court ruled as a matter of law that a creditor who makes a substantial contribution in a bankruptcy case may not recover attorney's fees under § 503(b)(4) unless the creditor incurring such fees incurred an independent expense allowable under § 503(b)(3).

Bankruptcy Code § 503(b) provides in relevant part:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

.... 

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

.... 

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

.... 

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

11 U.S.C. § 503(b)(3)(D) & (4).

Appellee argues that recovery of attorneys' fees under § 503(b)(4) is limited to "an entity whose expense is allowable under paragraph (3)" and that since paragraph (3) refers only to expenses "other than compensation and reimbursement specified in paragraph (4)," a claimant must have an expense allowable under paragraph (3), i.e., a non-attorney's fees expense, in order to recover attorney's fees under paragraph (4). This argument tracks the trial court's explanation set out above.

This issue of statutory interpretation has, as far as we have been able to discover, been addressed by only one other court. In *In re Marquam Investment Corp.,* 176 B.R. 34 (Bankr.D.Or.1994), the court awarded fees and specifically held that a creditor who incurred no direct costs could nevertheless recover attorney's fees under § 503(b)(4). *Id.* at 37.[3]

---

**3.** The court also denied the creditor's motion for imposition of *sanctions* against counsel for the

debtor. That portion of the ruling was reversed

Several courts have awarded fees under § 503(b)(4) where there were apparently no other expenses incurred—that is, no allowable expenses under § 503(b)(3) other than the professional's fees. However, none of the cases includes a discussion or even a recognition of the issue. *See e.g., In re U.S. Lines, Inc.,* 103 B.R. 427, 432 (Bankr. S.D.N.Y.1989) *aff'd,* No. 90 Civ. 3823, 1991 WL 67464 (S.D.N.Y. Apr. 22, 1991); *In re Catalina Spa & R.V. Resort, Ltd.,* 97 B.R. 13 (Bankr.S.D.Cal.1989); *In re Stoecker,* 128 B.R. 205 (Bankr.N.D.Ill.1991); *In re McLean Industries, Inc.,* 88 B.R. 36 (Bankr.S.D.N.Y. 1988); *In re Roberts,* 93 B.R. 442 (D.S.C.1988)(matter remanded for determination of amount of fees to be awarded under § 504(b)(4)); *In re Paolino,* 71 B.R. 576 (Bankr.E.D.Pa.1987); *In re Fall,* 93 B.R. 1003, 1012 (Bankr.D.Or.1988); *In re Granite Partners, L.P.,* 213 B.R. 440 (Bankr.S.D.N.Y. 1997).

In *Matter of DP Partners Ltd. Partnership,* 106 F.3d 667 (5th Cir.1997), *cert. denied, DP Partners, Ltd. Partnership v. Hall Financial Group, Inc.,* — U.S. —, 118 S.Ct. 63, 139 L.Ed.2d 26 (1997), the Fifth Circuit recently stated:

> A closely-related but separate provision is subsection (b)(4).... This provision is expressly dependent upon a claimant qualifying for an administrative expense award in subsection (3), which requires that expenses, other than professional fees, be actual and necessary.

*Id.* at 674. However, the court appeared inclined to award attorneys' fees notwithstanding that statement, even though there was no indication that the creditor had an independent expense claim. The matter was remanded for a determination of the amount of fees.

Collier's discusses the section, but sheds little light on the particular issue:

> Section 503(b)(4) is designed to permit reasonable compensation for professional services rendered by an attorney or an accountant to an entity whose own actual, necessary expenses are allowable under sections 503(b)(3)(A)-(F).

Section 503(b)(3) confers administrative status on various actual expenses incurred by creditors and others within the guidelines described by that section. It follows that reasonable compensation for professional services rendered by an attorney or an accountant incident to those guidelines should also be made an administrative expense. However, attorneys and other professionals for creditors or others may look to the estate of the debtor for compensation only as to the limited number of services incident to the actual, necessary expenses in the instances described in sections 503(b)(3)(A)-(F).

> Thus, for example, to the extent that a creditor under section 503(b)(3)(A) is entitled to the recovery of the actual, necessary expenses incident to the filing of an involuntary petition under section 303, it follows that the professional services contemplated by section 503(b)(4) would be those leading to the entry of an order for relief in a liquidation case under chapter 7 or in the success of a reorganization case begun as an involuntary case under chapter 11. It is important to observe the integration in section 503(b)(4) of the standards of section 330(a)(1) applicable to professional services rendered to the trustee for which compensation is sought. The legislative comments to section 330 are surely applicable here as well.

4 *Collier on Bankruptcy,* ¶ 503.11 at 503–72–73 (15th ed. rev'd 1997) (footnotes omitted). Contrary to the assertions of Appellee, we find this discussion to be neutral as to the issue at hand. It simply tracks the statute.

We find ourselves, thus, without binding authority on the issue and with little guidance. As a starting point we agree with Appellee and the trial court that a strict reading of the statute, in isolation, might preclude recovery of attorney's fees if that were the only expense incurred by the creditor in providing a substantial contribution (or, for that matter, any of the other activities set out in (b)(3) such as filing an involuntary petition or recovering assets with court approval). It takes little imagination, howev-

by the district court in *In re Marquam Investment Corp.,* 188 B.R. 434 (D.Or.1995).

er, to foresee the absurd results which could flow from such a strict interpretation.

For example, one can imagine two creditors, A & B, each in possession of information that a debtor had fraudulently squirreled away assets of the estate. Creditor A makes a free local call to his attorney, reveals the information and asks counsel to pursue the assets. Creditor B buys a stamp and sends his attorney a letter with the information and instructions to pursue the assets. Assuming that both creditors made a substantial contribution, only Creditor B, having fortuitously incurred the expense of a 32¢ stamp, could recover his fees.[4] Similarly, a literal reading would allow a creditor who paid the filing fee in an involuntary case to recover his attorney's fees, while another creditor who allowed counsel to incur the filing expense would be stuck with the entire bill no matter how appropriate the involuntary petition. These are results with which we cannot easily abide.

Appellee argues that this system, no matter how preposterous, is simply a method by which Congress intended to limit administrative expenses. Certainly, we recognize the Congressional goal of limiting administrative expense—sections 503(b)(3)(D) and (b)(4) have been described as "an accommodation between the twin objectives of encouraging 'meaningful creditor participation in the reorganization process,' and 'keeping fees and administrative expenses at a minimum so as to preserve as much of the estate as possible for the creditors.'" *Lebron v. Mechem Financial Inc.*, 27 F.3d 937, 944 (3d Cir.1994) (citations omitted). *See also In re United States Lines, Inc.*, 103 B.R. at 429; *In re Alumni Hotel Corp.*, 203 B.R. 624, 630 (Bankr.E.D.Mich.1996); *In re Granite Partners, L.P.*, 213 B.R. at 440. Nevertheless, we do not agree that Congress intended to do so in such a capricious manner.

Congress has, throughout the Code, demonstrated its manner of limiting administrative expenses. It does so by setting standards such as "reasonable," "actual, necessary" and "substantial contribution," or by setting out factors to be considered such as "based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title." It does not do so by setting arbitrary lines which would hang the decision upon whether a creditor recovers tens of thousands of dollars of attorney's fees on whether the creditor incurred the expense of a stamp.

We surmise that the exclusion of professional compensation from § 503(b)(3) was designed not to require that the creditor incur an expense in addition to attorney's fees and costs, but rather to channel those professional's fees through the additional standards of (b)(4)—"reasonable ... based on the time, the nature, the extent, and the value of such services, and the cost of comparable services...," there being no express "reasonable" requirement for nonprofessional expenses incurred by a creditor under (b)(3).[5] Recall that Collier's points out "[i]t is important to observe the integration in section 503(b)(4) of the standards of section 330(a)(1) applicable to professional services rendered to the trustee and for which compensation is sought." 4 *Collier on Bankruptcy*, ¶ 503.11 at 503–72 (15th ed. rev'd 1997) (footnote omitted). This is in keeping with the manner in which Congress controls administrative expenses.

The dissent argues that since the Bankruptcy Code is replete with lines which can result in disparate treatment to parties in similar situations with unusual or seemingly unfair results, we ought to accept a literal interpretation of § 503(b), notwithstanding the ridiculous results discussed above. Specifically, the dissent points to the time limitations for preferences (90 days) and fraudulent conveyances (one year) and the number of creditors required for filing an involuntary petition (three). These examples of cut-off dates and requirements are, however, distin-

---

**4.** This scenario was considered by Judge Hess in *Marquam Investment*, 176 B.R. at 37.

**5.** The legislative history is silent on the issue. The exclusionary language of paragraph (b)(3) was included in the initial versions of the Bank-

ruptcy Reform Act of 1978 of both the House and Senate. *See* H.R. 2266, S.Rept. No. 95–989 (July 14, 1978) and H.R. 8200, H.Rept. No. 95–595 (September 8, 1977).

guishable in that they are necessary to further the objective of the particular statute.

With respect to the preference provisions of § 547, Collier's explains the first of its two primary purposes. "First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during the debtor's slide into bankruptcy." 5 *Collier on Bankruptcy*, ¶ 547.01 at 547–9 (15th ed. rev'd 1997). Congress had to create or define the "short period before bankruptcy," hence the ninety-day cut-off.

With respect to the one-year period in § 548, Collier's explains:

The one-year reachback period is an integral part of each of the four substantive provisions of section 548(a). It represents an extension of the period of limitations for the avoidance of fraudulent transfers under former Section 67e from four months to one year. This change in time was deemed advisable for the reason that, as experience has demonstrated, "a dishonest debtor usually begins his fraudulent activities at a time long prior to four months before his bankruptcy and that most of the fraudulent transfers occur within the earlier period."

5 *Collier on Bankruptcy*, ¶ 548.03 at 548–17 (15th ed. rev'd 1997) (footnotes omitted). The one-year period is critical to the fraudulent conveyance provisions, it is designed to define that period during which "a dishonest debtor usually begins his fraudulent activities."

Finally, with respect to the required number of creditors under § 303, Collier's provides:

Section 303(b) contains very specific requirements concerning the number of entities that are necessary to commence an involuntary filing. These requirements are based on strong policy considerations, which include the fear that one or two recalcitrant creditors might file an involuntary case to harass a debtor. Moreover, one or two litigious creditors might compel the debtor to pay them (on a preferential basis) to avoid the involuntary filing.

2 *Collier on Bankruptcy*, ¶ 303.04 at 303–30 (15th ed. rev'd 1997) (footnotes omitted). The requirement of three creditors is designed to ensure "that one or two recalcitrant creditors" do not "file an involuntary case to harass a debtor."

Each of the provisions referenced by the dissent are directly related to and critical for the objectives of the sections in which they are found. In each case the purpose of the statute could not be met without some demarcation, arbitrary or no. On the other hand, the distinction which results from a strict reading of § 503(b), between creditors with and without independent claims, is not tied to any reasonable distinction recognized by the majority. There is no logical reason to afford disparate treatment to similarly situated creditors, both of whom provided a substantial benefit to the estate, based solely upon whether they have incurred independent expenses allowable under § 503(b)(3).

The majority does not, as the dissent suggests, conclude that the line was "improperly drawn." Rather, we conclude that Congress did not intend to draw the line at all—that the distinction between creditors with and without independent claims was unintentional.

We then are faced with one of those "rare cases" in which a literal interpretation is not warranted in light of the absurdity of the result and where arrival at the appropriate result requires a more liberal reading of the statute. These situations are infrequent but not unheard of. An example of such a rare situation is the line of cases holding that Bankruptcy Code § 108, which tolls the running of the time periods set by "applicable nonbankruptcy law," applies to toll the time periods of Bankruptcy Code § 507 despite the fact that § 507 is clearly not a "nonbankruptcy law." *See West v. United States (In re West)*, 5 F.3d 423 (9th Cir.1993) (addressing the 240–day priority period of § 507(a)(8)(A)(ii)), *cert. denied*, West v. U.S., 511 U.S. 1081, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994); *In re Brickley*, 70 B.R. 113, 114 (9th Cir. BAP 1986)(addressing the three-year priority period of § 507(a)(8)(A)(i)).

In *In re Gurney,* 192 B.R. 529 (9th Cir. BAP 1996), the BAP explained the holdings in *Brickley* and *West:*

While acknowledging that interpretation of the Bankruptcy Code normally requires a literal reading of the plain language of the statutes, these courts recognize that in those "rare cases" in which the literal application of a statute will defeat the objects and the policy of the law, the intention of the drafters rather than the strict language controls. *See United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (holding that the drafter's intent controls the interpretation of Section 506(b)); *United States v. American Trucking Assoc.,* 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940) (asserting that primary purpose in construing a statute is to give effect to congressional intent); *see also Burchinal v. Central Washington Bank (In re Adams Apple),* 829 F.2d 1484, 1488 (9th Cir.1987) (finding guidance from Congress' overall policy in passing Section 364).

*Gurney,* 192 B.R. at 535.

█ We are reluctant to stray from a strict interpretation, and yet are compelled to do so in order to avoid a result which would clearly run afoul of Congressional intent. We conclude, as did the court in *Marquam Investment,* that where a creditor makes a substantial contribution in a case, reasonable professional fees and costs may be awarded under § 503(b)(4) regardless of whether the creditor has an independent allowable expense under § 503(b)(3).

We remand the case for a determination of whether the 29 creditors represented by Appellant made a substantial contribution in the case.

█ On remand the bankruptcy court should also consider whether Appellant's fees are an expense "incurred by" the 29 creditors in the first place. At the hearing on the Motion for Reconsideration and on appeal Appellant appeared to suggest that his work was done on a contingency basis, that contingency being whether the court allowed the expense under § 503(b). This would appear

not to be an obligation and expense of the 29 creditors. However, this is a question of fact which should be addressed by the bankruptcy court on remand. This issue was recognized but not addressed by the court in *In re Granite Partners, L.P.,* 213 B.R. at 448, n. 8. The concern is a sound one. A primary objective of § 503(b)(3)(D) is to encourage creditor participation: "Often a creditor will possess both knowledge and resources which, if applied properly, could benefit the estate. The language of § 503(b)(3) reveals a policy of encouraging creditors to do so." *In re Fall,* 93 B.R. 1003, 1012 (Bankr.D.Or.1988). The policy is achieved by offering to reimburse those creditors who make substantial contributions. If the creditor is not liable for the fees in the first place, then the purpose of the statute is not served by the estate assuming the obligation.

## VI

### CONCLUSION

The bankruptcy court's order denying the Application and the Motion to Reconsider was grounded in an interpretation of Bankruptcy Code § 503(b) which we find to be erroneous. We hold that an independent allowable expense claim under paragraph (b)(3) is not a prerequisite to an award of reasonable fees under § 503(b)(4). Accordingly, we REVERSE.

This matter is REMANDED for a determination of: whether Appellant's clients, through Appellant, made a substantial contribution to the case; whether the Appellant's fees are an obligation and expense of the clients; and, if so, what, if any, fees should be allowed under § 503(b)(4) in accordance with this opinion.

RUSSELL, Bankruptcy Judge, dissenting:

I respectfully dissent. The bankruptcy court was clearly correct when it held:

The Application seeks fees of $102,753.50 and costs of $3,181.04. The sole basis upon which the Application might be granted is under Section 503(b)(4) of the Bankruptcy Code. In effect, that section allows recovery of "reasonable compensation for professional services by an

attorney" of a creditor whose expense is allowed under Section 503(b)(3). That section, in part, allows creditors to recover certain expenses "in making a substantial contribution in a case." *This court concludes, as a matter of law, for an attorney to recover compensation for professional services under Section 503(b)(4) the attorney must represent a creditor who has an allowable claim under Section 503(b)(3). Here, no member of the Handel Group holds a claim under Section 503(b)(3). Therefore, this court can not grant the Application as a matter of law.*

Minute Order filed on January 29, 1997, page 2 (emphasis added).

Section 503(b) could not be clearer. It provides, in pertinent part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> . . . .
>
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
>
> . . . .
>
> (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;
>
> . . . .
>
> (4) reasonable compensation for professional services rendered by an attorney or an accountant *of an entity whose expense is allowable under paragraph (3) of this subsection,* based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual,

necessary expenses incurred by such attorney or accountant;

(Emphasis added.)

The majority would simply strike the relevant portion of subsection (b)(4), which provides: "of an entity whose expense is allowable under paragraph (3) of this subsection, . . . ."

The majority gives lip service to the obvious by stating:

> Certainly we recognize the Congressional goal of limiting administrative expense—sections 503(b)(3)(D) and (b)(4) have been described as "an accommodation between the twin objectives of encouraging 'meaningful creditor participation in the reorganization process,' and 'keeping fees and administrative expenses at a minimum so as to preserve as much of the estate as possible for the creditors.'

The majority then holds: "Nevertheless, we do not agree that Congress intended to do so in such a capricious manner."

The majority later states:

> We then are faced with one of those "rare cases" in which a literal interpretation is not warranted in light of the absurdity of the result and arrival at the appropriate result requires a more liberal reading of the statute. These situations are infrequent but not unheard of.

Finally, the majority concludes:

> We are reluctant to stray from a strict interpretation, and yet are compelled to in order to avoid a result which would clearly run afoul of Congressional intent.

To support its conclusion that a literal application of Section 503(b)(4) would produce an "absurd" or a "capricious" result, the majority conjured up a hypothetical situation in which Creditor A incurred no expense and its attorney was therefore not entitled to compensation under Section 503(b)(4), whereas Creditor B incurred the expense of a 32 cent stamp and its attorney was therefore entitled to compensation under Section 503(b). Based on this hypothetical, the majority concludes that the statute produces an absurd result and should not be followed.

It is a simple matter to read and understand the requirements of Section 503(b). Application of the section according to its terms does not "run afoul" of any Congressional intent of which I am aware. To begin with, the requirement that a creditor have an administrative claim is consistent with the obvious Congressional intent to limit administrative expenses. Whether an attorney for a creditor with a 32 cent stamp expense could be compensated under Section 503(b)(4) remains a question, *inter alia*, of the reasonableness of the fees in question, but does not render the statute absurd or capricious.

The Code and Rules draw numerous lines. The fact that a line that is reasonably drawn will adversely affect the rights of a party who falls on the wrong side of the line does not mean that the line was improperly drawn. If this were the case, then much of the Code and the Rules would be invalid. Indeed, most statutes would be rendered invalid if one were to follow the majority's logic. This is demonstrated by the following two examples of a seemingly endless "parade of horribles" that would result from its logic.

As one example, the fact that an otherwise preferential transfer was made 91 days prior to the petition, or an otherwise fraudulent transfer was made one year and one day prior to the petition, does not invalidate the time limitations merely because the transfers could have been avoided had they been made one day later.

As a second example, Section 303(b) requires at least three petitioning creditors in an involuntary case if a debtor has twelve or more creditors. Some courts have held that creditors claiming insignificant amounts should not be included in determining the total number of creditors. *See, e.g., Denham v. Shellman Grain Elevator, Inc.*, 444 F.2d 1376 (5th Cir.1971). But even these courts have not invalidated the requirement of three creditors, because a small creditor might make the difference in placing a debtor into an involuntary bankruptcy.

The majority of courts have rejected *Denham* and applied the statute as written. *See In re Okamoto*, 491 F.2d 496 (9th Cir.1974); *In re Rassi*, 701 F.2d 627 (7th Cir.1983);

*Theis v. Luther*, 151 F.2d 397 (8th Cir.1945), *cert. denied*, 327 U.S. 781, 66 S.Ct. 681, 90 L.Ed. 1009 (1946).

An argument similar to the one raised in the present appeal was raised by the petitioning creditor in *Rassi*, and was rejected by the Seventh Circuit:

> The Bank alleges that the Rassis owe it in excess of $450,000.00. It would make little sense for this petitioner to be blocked from relief because the Rassis owe $10.00 to a doctor and $9.93 for magazines. This reasoning has convinced some courts to exclude claims which appear *de minimus*.
>
> . . . .
>
> However, regardless of how wise and salutary exclusion of small, recurring claims might be, Congress has not specifically authorized exclusion, and in the absence of any indication that Congress intended this exclusion, we have no authority to engraft it onto those that Congress expressly provided. We hold that bona fide small, recurring claims must be included in the § 303(b)(2) count.

701 F.2d at 632 (citations omitted). The Bank in *Rassi* never argued that the requirement of three petitioning creditors should be *stricken* from the statute because the involuntary petition could be blocked by the existence of several small creditors.

The Ninth Circuit in *Okamoto* concluded:

> We are not persuaded by *Denham*, for it appears to us that the *Denham* court ignored unambiguous Congressional direction. The Congress has explicitly prescribed the procedure that must be followed when less than three creditors join in the petition. In such circumstances the Act provides that the alleged bankrupt *must* have less than twelve creditors and expressly excludes certain types of creditors from the required computation. *Since Congress made no distinction between large and small claims, we cannot arrogate unto ourselves the power to do so and thereby engraft an additional exception to the*

84

*Act.* Hornblower's argument properly should be addressed to the Congress.

491 F.2d at 498 (emphasis added).

The above cases demonstrate that legislation is the function of Congress, not the courts. As stated by the United States Supreme Court in *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989):

> The plain meaning of legislation should be conclusive, except in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982).

489 U.S. at 242, 109 S.Ct. at 1030–31.

It is clear to me that the line drawn in Section 503(b) is a very reasonable attempt by Congress to limit administrative expenses under Section 503(b)(4) to attorneys for creditors with claims under Section 503(b)(3). Indeed, the matter before this court is exactly the type of case Congress most likely had in mind. Congress obviously did not want attorneys making administrative claims when their efforts mainly benefited the attorneys. In this case, the creditors were not personally liable for the fees. The ability of the attorneys to be compensated was totally contingent on the allowance of the fees under Section 503(b)(4).

Therefore, I would AFFIRM the bankruptcy court's denial of the Application.