**In re WESTERN ASBESTOS COMPANY, et al., Reorganized Debtors.**

Nos. 02–46284 T to 02–46286 T.

United States Bankruptcy Court,
N.D. California.

Nov. 5, 2004.

---

13. 11 U.S.C. § 547(c)(4) (emphasis added).

Charles D. Axelrod, Alan D. Pedlar, Stutman, Treister and Glatt, Los Angeles, CA, James A. Tiemstra, Miller, Starr and Regalia, Walnut Creek, CA, for Debtor.

Michael H. Ahrens, Jeffrey K. Rehfeld, Sheppard, Mullin, Richter and Hampton, San Francisco, CA, Peter Van N. Lockwood, Caplin, Drysdale and Chartered, Washington, DC, for Official Unsecured Creditors Committee.

## MEMORANDUM OF DECISION

LESLIE TCHAIKOVSKY, Bankruptcy Judge.

The application of Baron & Budd, P.C. ("Baron & Budd") for payment of attorneys' fees and expenses under 11 U.S.C. § 503(b) was presented to the Court on October 26, 2004. A timely objection to the application was filed by the Honorable Charles Renfrew, the Futures Representative (the "Futures Representative"). Thereafter, the Trust Advisory Committee and the Western Asbestos Settlement Trust filed joinders in the Futures Representative's objection.

At the conclusion of the hearing, the Court advised the parties that it would take under submission the threshold legal issue presented by the application: i.e., whether an attorney may obtain an administrative claim for fees and expenses for its creditor client's substantial contribution to a chapter 11 case when its creditor client has no obligation to pay those fees and expenses. Having considered the issue, the Court concludes that an attorney may obtain an administrative claim under these circumstances. The reasons for the Court's decision are set forth below.[1]

## SUMMARY OF FACTS

These administratively consolidated cases were filed on November 22, 2002. The debtors (the "Debtors") are MacArthur Co., Western MacArthur Co., and Western Asbestos. MacArthur Co. is the parent of Western MacArthur Co. Western Asbestos is a defunct company whose assets were acquired by Western MacArthur. All three entities were at one time distributors and installers of building materials containing asbestos. As a result, all three entities and their insurance companies were actual and/or potential defendants in lawsuits filed by individuals exposed to asbestos who have either developed a disease as a result of their exposure or fear that they will do so in the future.

The Debtors were engaged in coverage litigation with United States Fidelity and Guaranty Company ("USF & G"), one of their insurers, for approximately ten years. During this litigation, the Debtors entered into "stand still" agreements with many of the asbestos claimants. Some of these claimants obtained default judgments or stipulated judgments. However, they agreed not to attempt to enforce them against the Debtors unless the Debtors filed bankruptcy petitions. The claimants recognized that, given the Debtors' limited assets, as compared to the amount of the asbestos related claims, any meaningful recovery depended on the successful resolution of the coverage litigation.

The year before the bankruptcy cases were filed, the Debtors reached a settlement with USF & G. The settlement required the Debtors to file chapter 11 peti-

---

1. As the Court noted at the hearing, the format of the application was insufficiently detailed to permit the Court to make a determination of the appropriate amount of any award. The Court agreed that, if it determined that an administrative claim could be allowed under these circumstances, it would give Baron & Budd leave to supplement its application to supply the missing information. The Court will provide this information to Baron & Budd by separate order separate from this memorandum.

tions and obtain confirmation of a plan that provided USF & G with an injunction protecting it from any further liability for asbestos related claims against the Debtors. *See* 11 U.S.C. § 524(g). A committee of asbestos claimants with liquidated claims and the Honorable Charles Renfrew, who was later appointed by the Court as the Futures Representative, participated in the settlement negotiations.

A plan and disclosure statement were filed soon after the chapter 11 petitions were filed. The plan proponents sought approval of the disclosure statement and confirmation of the plan. Law firms representing claimants with unliquidated asbestos claims, who were not involved in the pre-filing negotiations, filed objections to the disclosure statement and to various applications filed by the plan proponents seeking court approval of the procedures governing the plan confirmation process. The disclosure statement and procedures were modified to some extent based on those objections. Some of the objections were overruled and did not result in any modification. Ultimately, the plan was confirmed.

On June 18, 2004, a document entitled Application of Certain Claimants Represented by Baron & Budd, P.C. for Payment of Attorney Fees and Expenses under 11 U.S.C. § 503(b)(3)(D) (the "Application") was filed. The Application sought an administrative claim totaling $338,024.45 for attorneys' fees and expenses incurred by the Law Firms of Stutzman, Bromberg, Esserman & Plifka and Wendel, Rosen, Black & Dean LLP (collectively the "Stutzman Firm"), co-counsel with Baron & Budd for the certain asbestos claimants with unliquidated claims. In one of the objections to the Application, the point was made that, since counsel for these asbestos claimants presumably had contingent fee

agreements with their clients and since it was the clients who were the creditors, not the law firms, neither the Stutzman Firm nor Baron & Budd were entitled to an administrative claim under 11 U.S.C. § 503(b)(3)(D) regardless of whether their clients had made a substantial contribution to the case.

At the hearing on the Application, the Court asked Sander Esserman ("Esserman"), a shareholder at the Stutzman Firm, to explain the financial arrangements between the Stuzman Firm, Baron & Budd, and the asbestos claimants with unliquidated claims. Esserman explained that, while the Stuzman Firm represented the asbestos claimants, they were hired and paid by Baron & Budd. Moreover, Baron & Budd did not claim the right to seek reimbursement for those payments from its asbestos claimant clients. At the conclusion of the hearing, the Court took under submission the issue of whether an administrative claim was allowable under these circumstances.

## DISCUSSION

The Application seeks allowance of an administrative claim pursuant to 11 U.S.C. § 503(b)(3)(D) for making a substantial contribution. Section 11 U.S.C. § 503(b)(3)(D) provides as follows:

(b) After notice and a hearing, there shall be allowed, administrative expenses ... including—

. . .

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, *incurred by* ... (D) *a creditor*, an indenture trustee, an equity security holder, or committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribu-

tion in a case under chapter 9 or 11 of this title;

11 U.S.C. § 503(b)(3)(D)(emphasis added). Baron & Budd has no right to an administrative claim for the Stutzman Firm's attorneys' fees and expenses pursuant to 11 U.S.C. § 503(b)(3)(D) for two reasons. First, 11 U.S.C. § 503(b)(3)(D) permits an administrative claim only for actual expenses incurred by a creditor. As discussed above, the asbestos claimants are the creditors, not Baron & Budd or the Stutzman Firm. The asbestos claimants did not incur any obligation to pay the Stutzman Firm's fees and expenses. Second, attorneys' fees and expenses are expressly excluded from 11 U.S.C. § 503(b)(3).

Baron & Budd should have based the Application on 11 U.S.C. § 503(b)(4). The Court will analyze the issue as if it had done so. Section 503(b)(4) provides that:

> (b) After notice and a hearing, there shall be allowed, administrative expenses . . . including—
>
> . . .
>
> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant; . . . .

11 U.S.C. § 503(b)(4). Section 503(b)(4) does not require that the attorneys' fees and expenses that form the basis for the administrative claim be incurred by the creditor. It simply requires that the attorney whose fees and expenses form the basis for the administrative claim represent the creditor who made a substantial contribution.

Nevertheless, at the hearing on the Application, the Futures Representative argued that the plain language of 11 U.S.C. § 503(b) requires the creditor to have incurred an obligation for the attorneys' fees and expenses. He based this argument on the use of the phrase "incurred by" in 11 U.S.C. § 503(b)(3). As the Court understands his reasoning, the attorneys' fees and expenses allowed by 11 U.S.C. § 503(b)(4) are not broader than the attorneys' fees excluded from the expenses allowed under 11 U.S.C. § 503(b)(3)(D). Because the expenses allowed under 11 U.S.C. § 503(b)(3)(D) must have been actually incurred by a creditor, the excluded attorneys' fees and expenses must also have been actually incurred by a creditor.

The Court finds this reading of 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) to be strained. A more natural reading is that 11 U.S.C. § 503(b)(3)(D) permits an administrative claim for expenses other than attorneys' fees and expenses that are actually incurred by a creditor who made a substantial contribution. Section 11 U.S.C. § 503(b)(4) permits an administrative claim for attorneys' fees and expenses of an attorney who represents a creditor who made a substantial contribution regardless of whether the fees and expenses were incurred by the creditor.

There is little or no case authority on this issue. The dicta contained in a few cases—most notably, in *In re Sedona Institute*, 220 B.R. 74 (9th Cir. BAP 1998)—supports the Futures Representatives' position. In *Sedona Institute*, the bankruptcy appellate panel reversed and remanded an order denying a law firm's administrative expense claim for making a substantial contribution. The trial court had not addressed the substantial contribution issue, having concluded that, to obtain an admin-

istrative expense claim for attorneys' fees and expenses under 11 U.S.C. § 503(b)(4), the creditor must have incurred expenses allowable under 11 U.S.C. § 503(b)(3)(D): i.e., other than attorneys' fees and expenses. The bankruptcy appellate panel disagreed.

On remand, the bankruptcy appellate panel directed the trial court to consider whether the creditor had made a substantial contribution. It also directed the court to consider whether the creditor had any obligation to pay the attorneys' fees and expenses. On this latter point, it stated as follows:

> A primary objective of § 503(b)(3)(D) is to encourage creditor participation. . . . The policy is achieved by offering to reimburse those creditors who make substantial contributions. If the creditor is not liable for the fees in the first place, then the purpose of the statute is not served by the estate assuming the obligation.

*Sedona Institute,* 220 B.R. at 81. *See also* 4 Collier on Bankruptcy § 503.11[4] (15th ed. rev.2003), citing *In re Glickman, Berkowitz, Levinson & Weiner, P.C.,* 196 B.R. 291, 295, n. 3 (Bankr.E.D.Pa.1996) and *In re Oxford Homes, Inc.,* 204 B.R. 264, 267–68 (Bankr.D.Me.1997). However, none of these courts looked closely at the wording of statute.

The Court disagrees with the dicta quoted above that policy reasons militate against allowing an administrative claim under these circumstances. As noted in *Sedona Institute* in the quotation above, the purpose of 11 U.S.C. § 503(b)(3)(D) and (4) is to encourage creditor participation in chapter 11 cases. *See also In re Celotex,* 227 F.3d 1336, 1338–39 (11th Cir. 2000). Creditors generally participate in chapter 11 cases through attorneys. If the creditor makes a substantial contribution to a chapter 11 case, why should it make a

difference from a policy standpoint whether the creditor is obligated to pay the attorneys' fees and expenses? The requirement that the attorney represent a creditor who made a substantial contribution protects the estate from the assertion of a claim by an attorney with no connection to the case.

Finally, read thus, 11 U.S.C. § 503(b)(4) is not unique. Courts have construed other statutes less susceptible to such an interpretation to permit recovery of attorneys' fees even when the client was not obligated to pay them. For example, in *Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), a civil rights case, the Supreme Court reversed the court of appeals' reduction of the trial court's fee award to the plaintiff to the amount that would have been due under his contingent fee agreement. It cited with approval *Davis v. County of Los Angeles,* 8 E.P.D. ¶ 9444, 1974 WL 180 (C.D.Cal.1974), approving "a fee award to counsel in a public interest firm which otherwise would have been entitled to no fee." *Blanchard,* 489 U.S. at 93, 109 S.Ct. 939.

Similarly, In *Kessler v. Associates Financial Services Company of Hawaii, Inc.,* 639 F.2d 498, 499 (9th Cir.1981), the Ninth Circuit affirmed the award of attorneys' fees to a Truth in Lending Act plaintiff under 15 U.S.C. § 1640(a)(3) despite the fact that the plaintiff had been represented without charge by a legal services organization. In both instances, the language of the relevant statute was less susceptible to this construction than 11 U.S.C. § 503(b)(4).

## CONCLUSION

For the reasons stated above, the Court concludes that a law firm that represents a creditor who has made a substantial contribution in a chapter 11 case may obtain

an administrative claim for its reasonable fees and expenses under 11 U.S.C. § 503(b)(4) even though the creditor was not obligated to pay and has not paid those fees and expenses.