**In re WIND N' WAVE, Debtor.**

**Salomon North America; North Sports, Inc.; Nitro; Law Offices of David B. Bloom, Appellants,**

**v.**

**Nancy Knupfer, Chapter 7 Trustee; United States Trustee, Appellees.**

**BAP No. CC–04–1462–BKMA.
Bankruptcy No. LA–99–55241–EC.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 23, 2005.

Filed May 2, 2005.

Before: BRANDT, KLEIN and MARLAR, Bankruptcy Judges.

**OPINION**

BRANDT, Bankruptcy Judge.

This appeal presents the question of whether Bankruptcy Code § 503(b)(4)[1] permits a fee award to counsel representing petitioning creditors in prosecuting an involuntary petition where the creditors, although eligible for reimbursement of actual expenses under § 503(b)(3), had no other actual expenses to claim.

The bankruptcy court declined to follow our precedent, *In re Sedona Institute,* 220 B.R. 74 (9th Cir. BAP 1998), and held that no fee could be awarded unless the petitioning creditors actually had expenses other than professional fees and costs.

We are persuaded that *Sedona Institute,* which permits a fee award under § 503(b)(4) so long as there is a § 503(b)(3)-eligible creditor regardless of whether that creditor actually incurred an out-of-pocket expense, is correct, and that it has not been undermined by the Supreme Court's decision in *Lamie v. United States Trustee,* 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). Accordingly, we REVERSE.

**I. FACTS**

The facts are undisputed. In December of 1999, appellants Salomon North America, Inc., North Sports, Inc., and NITRO (collectively, the "Petitioning Creditors"), suppliers of athletic inventory, filed an involuntary chapter 7 petition under § 303 against Wind N' Wave, a Los Angeles sports retailer. Appellant Law Offices of David B. Bloom (the "Bloom Firm") represented the Petitioning Creditors. In March of 2000, the bankruptcy court entered an Order for Relief, and appellee Nancy Knupfer ("Trustee") was appointed

---

1. Absent contrary indication, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330; all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

as chapter 7 trustee. All fees in question were incurred before the Trustee took over the estate.

The ultimate liquidation of the estate was projected to result in a 12% return to six general unsecured creditors, three of which were the Petitioning Creditors.

In April of 2000 the Bloom Firm filed an application for payment of its fees, as an administrative claim, for work on behalf of the Petitioning Creditors prior to the entry of the order for relief. When the fee application came on for hearing more than four years later, neither the U.S. Trustee nor the Trustee opposed it. To the contrary, her counsel orally advised the court that the Trustee had "signed off" on the application.

Nevertheless, the bankruptcy court orally ruled that certain items in the application were improper, and sua sponte raised the legal question of whether the Petitioning Creditors actually had to have some out-of-pocket expenses allowed under § 503(b)(3)(A) before their attorney could be awarded compensation and expenses:

Sub-section 503(b)(4) says, reasonable compensation for professional services rendered by an attorney of an entity whose expense is allowable under paragraph 3 of this sub-section. I'm not aware that the creditors have any expenses allowable under paragraph 3, so I don't know how you would get to seeking expenses under paragraph 4.

Transcript, 3 August 2004, at 18–19.

The Bloom Firm filed a memorandum analyzing *Sedona Institute* and a revised application making the appropriate reductions. The supporting declaration of counsel claimed that "[d]ue to the actions and perseverance of Applicant … the Trustee was able to investigate and ultimately succeeded in collecting funds on behalf of the Estate, utilizing, in part, information ob-

tained from the Petitioning Creditors through Applicant." The revised application, paragraph 12, read:

It was the expectation of the Petitioning Creditors and Applicant that, should Petitioning Creditors successful[ly] prosecute the Involuntary Petition, resulting in an asset estate, that the reasonable[,] necessary and actual fees and costs incurred in the prosecution of That [sic] Petition would be an administrative expense. To the extent that those fees and expenses are not paid by the Estate, Petitioning Creditors must take the burden of those fees and expenses not withstanding [sic] that their efforts benefitted the entire Estate.

In response, the Trustee filed comments taking a neutral, but supportive, position. Saying that she had no personal knowledge of the work, which was all performed before she was appointed, she noted:

[i]n general I believe the reduced fees and costs … to be reasonable for the identified tasks as counsel for the Petitioning Creditors, but I will leave that final determination in the capable hands of the trier of fact.

Nor did the U.S. Trustee oppose the motion or otherwise participate either in the bankruptcy court or in this appeal.

After hearing, the bankruptcy court denied the application, specifically rejecting *Sedona Institute*. It ruled that "for an entity to have a claim under Section 503(b)(4) there must first be an allowable claim of a claimant under Section 503(b)(3)." Transcript, 1 September 2004, at 4.

The bankruptcy court entered an order on 14 September 2004 denying the revised application; the Petitioning Creditors timely appealed. We granted Appellants' motion for stay pending appeal and ordered that this appeal be expedited.

## II. JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334 and § 157(a), (b)(2)(A) and (B). We do under 28 U.S.C. § 158(c).

## III. ISSUES

A. Whether the Trustee has waived the estate's rights; and

B. Whether a creditor must have an allowed expense under § 503(b)(3) in order for its attorney to recover fees under § 503(b)(4).

## IV. STANDARDS OF REVIEW

■ We review the bankruptcy court's conclusions of law, and its interpretation of the Bankruptcy Code and Rules, de novo. No deference is given to the trial court's conclusions. Rule 8013; *In re Staffer*, 262 B.R. 80, 82 (9th Cir. BAP 2001), *aff'd*, 306 F.3d 967 (9th Cir.2002); *In re Pardee*, 218 B.R. 916, 919 (9th Cir. BAP 1998), *aff'd*, 193 F.3d 1083 (9th Cir.1999).

## V. DISCUSSION

This appeal involves the interpretation and interaction of two subsections of the Code relating to allowance of administrative expenses. Sections 503(b)(3)(A) and (b)(4) provide, in part:

(b) After notice and a hearing, there shall be allowed administrative expenses, ... including—

. . . .

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, **incurred by—**

(A) a creditor that files a petition under section 303 of this title;

. . . .

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity **whose** expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such · services, ... and reimbursement for actual, necessary expenses incurred by such attorney or accountant[.]

(emphasis added).

This provision for paying the expenses and professional fees of petitioning creditors who successfully prosecute involuntary petitions is reciprocal to the provision in § 303(i) for making petitioning creditors pay the fees and expenses of alleged debtors who successfully defend involuntary petitions.

### A. *Waiver by Trustee?*

■ We raise on our own authority the question whether the Trustee should be allowed to participate in this appeal in light of the fact that the Trustee did not align herself against the appellants in the trial court.

The Trustee initially "signed off" on the fee application and thereafter filed only comments, expressing no position on the legal issue, and stating that the fees and expenses sought in the revised application were reasonable. The Trustee's counsel attended the bankruptcy court hearings, but did not argue, nor did she specifically preserve her right to defend an appeal. *See Orix Credit Alliance, Inc. v. Taylor Machine Works, Inc.*, 125 F.3d 468, 478 (7th Cir.1997) (discussing preservation of issues for appeal: that the party "stated distinctly the matter objected to and the grounds of the objection, and therefore provided the court 'with full information' so that the court could 'avoid all errors that are avoidable.' " (citations omitted)).

In *In re Enewally*, 368 F.3d 1165 (9th Cir.2004), *cert. denied*, —— U.S. ——, 125 S.Ct. 669, 160 L.Ed.2d 497 (2004), the creditor bank did not object to the debtor's

valuation of collateral, but on appeal the bank challenged the value determined by the bankruptcy court. Applying the general rule against raising issues on appeal which were not presented to the trial court, the Ninth Circuit affirmed the district court, holding that the bank had forfeited that right. *Id.* at 1173. But *Enewally* also recognized three exceptions to the general rule, one of which is that "the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue below." *Id.* (citation omitted). *See also In re Focus Media, Inc.,* 378 F.3d 916, 927 n. 9 (9th Cir.2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 1742, 161 L.Ed.2d 616 (2005) (reaching merits on the legal issue even when appellant waived issue at summary judgment).

This exception applies here: the appeal concerns primarily an issue of law, the record is adequate for purposes of review, and Appellants have not even argued waiver. The § 503(b) issue was clearly before the bankruptcy court, so there is no question that it was fairly put "on notice as to the substance of the issue." *See Nelson v. Adams USA, Inc.,* 529 U.S. 460, 469, 120 S.Ct. 1579, 146 L.Ed.2d 530 (2000).

We will exercise our discretion to consider the Trustee's brief to the extent her arguments pertain to the issue of law.

But we reject the Trustee's attempt to raise a new factual issue for the first time on appeal: whether the Petitioning Creditors are actually indebted to the Bloom Firm for the fees. The bankruptcy court decided the matter on the assumption of the accuracy of the unchallenged assertion in the moving papers that Petitioning Creditors are obliged to compensate their counsel to the extent that a § 503(b)(4) award is not made. We accept the appeal in that procedural posture (which comports with the reality that few lawyers will voluntarily agree to donate services to a client capable of paying fees) and, noting that none of the *Enewally* exceptions permit the factual premise to be challenged at this stage of the litigation, we decline to consider it.

## B. *Merits*

The analysis naturally begins with *Sedona Institute,* a voluntary chapter 11 case. There, the applicant, a law firm representing creditors during a case, sought legal fees under § 503(b)(4) incurred in prosecuting a successful effort to obtain the appointment of a chapter 11 trustee or examiner. Because neither the law firm nor its client had an allowable expense under § 503(b)(3), in the context wherein a § 503(b)(3)(D) "substantial contribution" was asserted, the bankruptcy court denied the application.

This Panel, over a dissent, reversed. Citing *In re Marquam Investment Corp.,* 176 B.R. 34 (Bankr.D.Or.1994), *rev'd on other grounds,* 188 B.R. 434 (D.Or.1995), and considering 4 *Collier on Bankruptcy,* ¶ 503.11 at 503–72–73 (15th ed. rev.1997), the majority held:

> We then are faced with one of those "rare cases" in which a literal interpretation is not warranted in light of the absurdity of the result and where arrival at the appropriate result requires a more liberal reading of the statute.
>
> . . . .
>
> We are reluctant to stray from a strict interpretation, and yet are compelled to do so in order to avoid a result which would clearly run afoul of Congressional intent. We conclude ... that where a [§ 503(b)(3)(D) ] creditor makes a substantial contribution in a case, reasonable professional fees and costs may be awarded under § 503(b)(4) regardless of whether the creditor has an independent allowable expense under § 503(b)(3).

*Sedona Institute,* 220 B.R. at 80–81. We remanded, inter alia, for findings on whether the creditors had made a "substantial contribution" as a condition for awarding professional fees and costs. *Id.* at 81.

The dissent in *Sedona Institute,* which the bankruptcy court followed here, reasoned:

> It is a simple matter to read and understand the requirements of Section 503(b). Application of the section according to its terms does not "run afoul" of any Congressional intent of which I am aware. To begin with, the requirement that a creditor have an administrative claim is consistent with the obvious Congressional intent to limit administrative expenses. Whether an attorney for a creditor with a 32 cent stamp expense could be compensated under Section 503(b)(4) remains a question, *inter alia,* of the reasonableness of the fees in question, but does not render the statute absurd or capricious.
>
> . . . .
>
> It is clear to me that the line drawn in Section 503(b) is a very reasonable attempt by Congress to limit administrative expenses under Section 503(b)(4) to attorneys for creditors with claims under Section 503(b)(3) . . . . Congress obviously did not want attorneys making administrative claims when their efforts mainly benefitted the attorneys. In this case, the creditors were not personally liable for the fees. The ability of the attorneys to be compensated was totally contingent on the allowance of the fees under Section 503(b)(4).

*Id.* at 83–84 (Russell, B.J., dissenting).

### 1. *Sedona Institute as Precedent*

■ Regardless of whether, as a formal jurisprudential rule, the bankruptcy court is bound by BAP precedent,[2] we regard ourselves as bound by our prior decisions, and "will not overrule our prior rulings unless a Ninth Circuit Court of Appeals decision, Supreme Court decision or subsequent legislation has undermined those rulings." *In re Ball,* 185 B.R. 595, 597 (9th Cir. BAP 1995); *In re Aheong,* 276 B.R. 233, 249 (9th Cir. BAP 2002) (stare decisis); *In re Cady,* 266 B.R. 172, 180–81, n. 8 (9th Cir. BAP 2001), *aff'd,* 315 F.3d 1121 (9th Cir.2003)(same).

We note, further, that no reported case adopts the dissent in *Sedona Institute* and, accordingly, do not agree with the bankruptcy court's characterization of that decision as a minority position. In the few reported decisions which touch upon the question in a manner consistent with the *Sedona Institute* dissent, it is usually in the context of dictum in which the court is not focused on the precise question confronting us. For example, in a case involving requests by mortgage creditors for fee awards under § 506(b) against debtors in stay relief matters, a bankruptcy court in another circuit observed, in pure dictum, that "reasonable attorneys fees are expressly available to creditors as an admin-

---

**2.** We have held that our decisions bind all bankruptcy courts in the Ninth Circuit. *In re Windmill Farms, Inc.,* 70 B.R. 618, 622 (9th Cir. BAP 1987), *rev'd on other grounds,* 841 F.2d 1467 (9th Cir.1988). *See also* Hon. Henry J. Boroff, *The Precedential Effect of Bankruptcy Appellate Panel Decisions,* 103 Com. L.J. 212 (1998).

The Ninth Circuit has not determined whether BAP decisions are binding in the "circuit as a whole." *In re Zimmer,* 313 F.3d 1220, 1225 n. 3 (9th Cir.2002). Some bankruptcy courts have ruled that BAP decisions do not bind them. *Compare In re Locke,* 180 B.R. 245, 254 (Bankr.C.D.Cal.1995) (BAP decisions not binding on bankruptcy courts), with *In re Barakat,* 173 B.R. 672, 676–80 (Bankr.C.D.Cal.1994) (BAP decisions binding on bankruptcy courts), *aff'd on other grounds,* 99 F.3d 1520 (9th Cir.1996).

istrative expense under § 503(b)(4) in the few situations where they can recover other expenses under § 503(b)(3)—for example, for filing an involuntary petition or recovering for the estate property the debtor had transferred or concealed." *In re Biazo*, 314 B.R. 451, 458 (Bankr.D.Kan. 2004). Although it is not evident that the *Biazo* court's generic description actually takes a position in the *Sedona Institute* debate, it plainly was not addressing the 503(b)(4) distinction between "is allowable" and "is allowed."

Moreover, *Sedona Institute's* majority opinion has been cited with approval by other bankruptcy courts both within and outside this Circuit. *In re Gurley*, 235 B.R. 626, 635 (Bankr.W.D.Tenn.1999) ("the ability to recover attorney fees and expenses logically depends upon whether the fees have been incurred by an entity who falls into one of the categories established section 503(b)(3), not upon whether such entities have incurred expenses other than professional fees"); *In re Godon, Inc.*, 275 B.R. 555, 567 (Bankr.E.D.Cal.2002) ("It is not ... essential that the eligible creditor have actually incurred an expense".) In *In re Western Asbestos, Co.*, 318 B.R. 527 (Bankr.N.D.Cal.2004), the bankruptcy court, construing *Sedona Institute* as dicta, held:

> A more natural reading is that 11 U.S.C. § 503(b)(3)(D) permits an administrative claim for expenses other than attorneys' fees and expenses that are actually incurred by a creditor who made a substantial contribution. Section 11 U.S.C. § 503(b)(4) permits an administrative claim for attorneys' fees and expenses of an attorney who represents a creditor who made a substantial contribution regardless of whether the fees and expenses were incurred by the creditor.

*Id.* at 530 (although, at 530–31, it disapproved of *Sedona Institute* on a different legal issue).

2. *Sedona Institute: Correct?*

█ Nor are we persuaded by the Trustee's argument that *Lamie v. U.S. Trustee*, 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004), is supervening contrary authority. There the Supreme Court held that, under the plain (but "awkward" and "ungrammatical") language of the Code, a debtor's attorney could not be awarded compensation under § 330(a)(1) unless the attorney had been appointed under § 327. The Supreme Court's approach was to apply the Code according to its plain terms, beginning its analysis with the existing statutory text:

> It is well established that "when the statute's language is plain, the sole function of the courts—*at least where the disposition required by the text is not absurd*—is to enforce it according to its terms."

*Id.* at 534, 124 S.Ct. 1023 (citation omitted; emphasis added).

But, as held in *Sedona Institute*, 220 B.R. at 78–79, the results of the Trustee's interpretation here would be absurd.

Moreover, were we to agree that *Lamie* eviscerates *Sedona Institute*, it does not follow that we must reach a contrary result. Rather, we take a fresh look at the statute, unconstrained by our prior analysis. In doing so, we conclude that on a strict reading the plain text of § 503(b)(3) and (4) does not require the petitioning creditor to have been allowed expenses. The statute's criterion is that the creditor's expenses be "allowable," not "allowed." The argument that the § 503(b)(3) entity must actually have an expense would be more plausible if the pertinent statutory phrase read "an entity whose expense is allowed under § 503(b)(3)."

Indeed, the concession by the *Sedona Institute* majority that it was taking liberties with the language of the statute upon which the trial court relied in this instance appears, in retrospect, to have been improvident. The construction adopted by the trial court, and by the dissent in *Sedona Institute,* disregards the distinction between "allowed" and "allowable." That language is fairly read, as in *Western Asbestos,* 318 B.R. at 530, to require only that the creditor be qualified for an award of expenses under § 503(b)(3) for compensation to be awarded to the creditor's counsel (or accountant) under § 503(b)(4). The section does not by its terms mandate that the creditor have expenses which have been allowed, nor even any other expenses at all. We decline to read in such a requirement.

This analysis is further supported by the recognition that, in the instance of involuntary petitions, the availability of awards to successful petitioning creditors and their counsel under §§ 503(b)(3)(A) and (b)(4) are essentially symmetric with the rights of alleged debtors to recover fees and costs under § 303(i) when they successfully fend off an involuntary petition. The language of § 303(i) does not admit of the construction that the alleged debtor must actually have a separately-reimbursable expense before fees and costs could be awarded. An asymmetric construction of §§ 503(b)(3)(A) and (b)(4) would be unfair and absurd.

We are persuaded that the trial court's construction of the statute is incorrect, and we need not reach the public policy arguments.

## VI. CONCLUSION

We exercise our discretion to hear this appeal on the issue of law presented, notwithstanding possible waiver of the estate's rights on appeal by the Trustee's lack of objection to the Revised Application.

*Sedona Institute* is not distinguishable, and there is no basis for us to depart from its holding "that an independent allowable expense claim under [§ 503](b)(3) is not a prerequisite to an award of reasonable fees under § 503(b)(4)." 220 B.R. at 81. Alternatively, freshly construing the statute, we so hold.

We REVERSE and REMAND for determination of the administrative claim, and accordingly VACATE our order staying distribution, effective on the finality of that determination.