Concurrence by Judge JURY.
JURY, Bankruptcy Judge,
Concurring.
With reluctance, I concur with the Panel’s decision reversing the bankruptcy court’s decision finding appellants in contempt for violating the automatic stay of § 362. We are compelled to follow the holding in Hooker, which in turn, was followed in Dumas. See Salomon N. Am. v. Knupfer (In re Wind N’ Wave), 328 B.R. 176, 181 (9th Cir. BAP 2005) (bankruptcy panel is bound by its previous precedent). *601 Nonetheless, I write separately because I believe that Hooker’s, judicially-created rule excepting a contempt action for nonpayment of court-ordered sanctions from the automatic stay is not consistent with the modern breadth of the automatic stay espoused in Ninth Circuit case law and at odds with the plain language of § 362(b).
The issues decided by the Hooker court highlight just how undeveloped the concept of the stay in bankruptcy was at the time the decision was rendered. Rather than questioning whether a bankruptcy stay precluded a district court from conducting a contempt proceeding arising from noncompliance with discovery, the issue was initially posed as whether the district court had jurisdiction to issue the order of contempt after the bankruptcy petition was filed. The Ninth Circuit recognized the question was not jurisdictional because the stay merely “suspends the proceedings.” That the Circuit was even asked to consider a jurisdictional impact, however, illustrates how novel the stay concept was at the time.
Moreover, Hooker interpreted the impact of a stay provided by then Rule 401(a), a stay limited in scope when compared to the today’s version of § 362(a). Rule 401(a) became effective in 1973 and provided:
The filing of a petition shall operate as a stay of the commencement or continuation of any action against the bankrupt, or the enforcement of any judgment against him, if the action or judgment is founded on an unsecured provable debt other than one not dischargeable under clause (1), (5), (6), or (7) of section 35(a) of this title.
At the time of its ruling, the court noted that no cases had discussed the precise scope of the Rule 401(a) stay. Hooker, 560 F.2d at 417 n. 8. The court, however, was persuaded by the concept that the purpose of the Rule 401 stay was only to prevent adjudication or collection of the underlying unsecured debt, such that collateral proceedings like enforcement of discovery orders did not fall within that province. Thus, the court decided that continuing with the district court contempt proceeding did not violate the Rule 401 stay. This holding established the rule of law applied by the Panel in Dumas.
In the meantime, the Bankruptcy Act of 1978 was enacted and along with it came the automatic stay of § 362(a) and, perhaps of equal importance, a list of statutory exceptions to the stay provided by § 362(b). “[I]n enacting § 362 in 1978, Congress significantly broadened the scope of the automatic stay, an expansion that had begun only five years earlier with the adoption of the Bankruptcy Rules in 1973.... In the face of the greatly increased scope of § 362, it was necessary for Congress to limit this new power expressly.” Midlantic Nat’l Bank v. N.J. Dep’t of Envtl. Prot., 474 U.S. 494, 504, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) (citations omitted) (noting that the express exceptions to the stay were meant to overrule certain judicial expansions of the stay).
Section 362 has continually expanded over decades, with the petition now staying all entities from
(1) the commencement or continuation, including the issuance or employment of process, of a judicial administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; *602 [and] (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]
Clearly, the plain language of the statute today shows that the reach of the stay is much broader than that previously provided by Rule 401(a). Incredibly, at least to me, the Dumas Panel found the “present statute and the former rule are essentially similar.” In re Dumas, 19 B.R. at 677. Because of that perceived similarity, the Panel, without any discussion of the statutory exceptions then listed in § 862(b), held that the rule in Hooker controlled the outcome of the case — a contempt proceeding arising from a discovery dispute like Hooker.
Since Hooker, Ninth Circuit case law has continually recognized and preserved the broad scope of the stay outlined in § 362(a). In Schwartz v. United States (In re Schwartz), 954 F.2d 569 (9th Cir.1992), the Ninth Circuit ruled that an act taken in violation of the stay was void ab initio. In so ruling, the court explained the importance of the stay:
[T]he automatic stay plays a vital role in bankruptcy. It is designed to protect debtors from all collection efforts while they attempt to regain their financial footing. As Congress stated: “The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his [or her] creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.”
Id. at 571 (emphasis in original).
In the context of determining that the power to interpret the scope of the automatic stay was exclusively held by the bankruptcy courts, the Circuit again emphasized the broad sweep of the stay in In re Gruntz, 202 F.3d at 1081-82:
The automatic stay is self-executing, effective upon the filing of the bankruptcy petition.... The automatic stay sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor, enforcement of prior judgments, perfection of liens, and “any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case.”
The cases which have echoed this interpretation of the breadth of the stay since Schwartz and Gruntz are legion and need not be cited here. However, more recent decisions emphasize the absolute power of the stay. See Sternberg v. Johnston, 595 F.3d 937, 943 (9th Cir.2010) (“We have held on several occasions that the automatic stay imposes on non-debtor parties an affirmative duty of compliance” to remedy automatic stay violations.); Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210, 1215 (9th Cir.2002) (“Consistent with the plain and unambiguous meaning of the statute, and consonant with Congressional intent, we hold that § 362(a)(1) imposes an affirmative duty to discontinue post-petition collection actions.”). I cannot help but wonder if the Dumas Panel had been informed by these cases, would it still opine that the Rule 401(a) stay and the § 362 stay were “essentially similar”?
More than just the scope of the stay is in play here, however. Whatever may have been the perceived scope of the stay before the enactment of the Code, Congress has since regulated the exceptions to the stay by statute. When the Bankruptcy Code took effect in 1978, § 362(b) only contained seven types of actions not stayed *603 under § 362(a). See Bankruptcy Reform Act of 1978, Pub.L. No. 95-598 (1978) (superseded by 11 U.S.C § 362(b) (2005)). Between 1990 and 1994, § 362(b) had expanded to eighteen exceptions, then when the Code was modified by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Congress added another ten exceptions so that § 362(b) presently specifies twenty-eight categories of actions not barred by the stay.
The legislative history of § 362 illuminates the thinking of Congress when the Code was enacted:
Subsection (b) lists seven exceptions to the automatic stay. The effect of an exception is not to make the action immune from injunction. The court has ample other powers to stay actions not covered by the automatic stay. Section 105 ... grants the power to issue orders necessary or appropriate to carry out the provisions of title 11. The district court and the bankruptcy court as its adjunct have all the traditional injunc-tive powers of a court of equity.... Stays or injunctions issued under these other sections will not be automatic upon the commencement of the case, but will be granted or issued under the usual rules for the issuance of injunctions. By excepting an act or action from the automatic stay, the bill simply requires that the trustee move the court into action, rather than requiring the stayed party to request relief from the stay. There are some actions, enumerated in the exceptions, that generally should not be stayed automatically upon the commencement of the case, for reasons of either policy or practicality. Thus, the court will have to determine on a case-by-case basis whether a particular action which may be harming the estate should be stayed.
S. Rep. 95-989 (1978), p. 51; H.R. Rep. 95-595 (1977) p. 321 (reprinted in 1978 U.S.C.C.A.N. 5787, 5837).
Congress thus flagged circumstances which it believed, for policy or practical reasons, should not be subject to the stay automatically, shifting the burden to the trustee or debtor to seek a stay if necessary to preserve the estate. Significantly, nowhere in § 362(b) does Congress choose to except contempt proceedings. If Congress had intended to except contempt proceedings in a non-bankruptcy forum from the automatic stay for reasons of policy or practicality, it would have done so expressly and not by silence. The Supreme Court has held that “[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.” Andrus v. Glover Constr. Co., 446 U.S. 608, 616-17, 100 S.Ct. 1905, 64 L.Ed.2d 548 (1980). This recognition presents another source of conflict — by applying the rule in Hooker, we effectively incorporate another exception into § 362(b). That would mean creditors could pursue twenty-nine different types of actions without concern for violating the automatic stay. As this cannot be what Congress intended, it would seem that the statutory exceptions are exclusive.
The oft-quoted maxim of statutory interpretation expressio unius est exclusio alterius also tells us that when a legislature “includes particular language in one section of a statute ... it is generally presumed that [the legislature] acts intentionally and purposely in the disparate inclusion or exclusion.” Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). It is true that this principle does not apply “unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no *604 to it.” Marx v. Gen. Revenue Corp., — U.S. -, 133 S.Ct. 1166, 1175, 185 L.Ed.2d 242 (2013). Moreover, this rule is a “rule of interpretation, not a rule of law. The maxim is ‘a product of logic and common sense,’ properly applied only when it makes sense as a matter of legislative purpose.” Longview Fibre Co. v. Rasmussen, 980 F.2d 1307, 1313 (9th Cir.1992). Thus, it can be overcome by a strong indication of contrary legislative intent or policy.
While it is impossible to know if Congress in 1978 considered excepting contempt proceedings from the automatic stay and rejected that concept, it is logical and makes common sense to apply the maxim expressio unius est exclusio alterius here. Not including all contempt proceedings within the exclusions to the automatic stay is fully consistent with the legislative purpose behind the automatic stay, which is to stop collection actions against the debtor to give him or her breathing space. I do recognize that exceptions to the automatic stay are based on specific policies and that by allowing a contempt action to proceed the dignity of the court issuing the contempt could be upheld. After all, as opined by more than one court, a debtor should not be allowed to disrespect a court order without consequence by retreating behind the automatic stay of a bankruptcy that he or she voluntarily files. But I do not find this policy overcomes the plain language of the statutory exceptions listed in § 362(b).
Further, a bankruptcy court can always grant relief from stay for “cause” to allow the delinquent debtor to face his or her due before the court whose order he or she has disobeyed. The bright-line Hooker exception to the automatic stay for contempt proceedings fails to recognize that not all violations of court orders are of equal magnitude and show disrespect for the court issuing the disobeyed order. Where, as here, the court order was to pay a sum of money to a party litigant for a discovery violation, I view this as an action more to collect money from the debtor than to compel compliance with a court order. Collection of money from the debtor arising from a prepetition debt is just the type of action intended to be stayed by § 362.
As noted above, Hooker and Dumas have drawn criticism from at least one bankruptcy court in the Ninth Circuit and courts in other jurisdictions for the same reasons I assert here. One bankruptcy court analyzed the different types of contempt actions I have highlighted above:
Every court faces two types of contempt proceedings: those resulting from a private squabble among litigants, where the role of the court is merely to enforce the law and move the litigation to conclusion, and those resulting from acts truly offensive to the court and tending to interfere with the administration of justice. An example of the former would be a discovery sanction; examples of the latter might include disrespectful conduct in court or the bringing of a frivolous appeal. In order for contempt proceedings to go forward after bankruptcy, there must be a direct, unattenuated need for them in order to deter wrongful conduct and not just collect money.
In re Musaelian, 286 B.R. at 782; see also In re Atkins, 176 B.R. at 1005; In re Cherry, 78 B.R. at 70. I agree with these bankruptcy courts that court-created exceptions to the automatic stay should not have survived the Bankruptcy Act of 1978. Accordingly, a party to a state court contempt proceeding, like all others subject to the § 362 stay, should be required to seek relief from the stay for cause, leaving the determination of whether the action should go forward to the discretion of the bank- *605 ruptey court. For all these reasons, I conclude that the stay imposed under § 362(a) should “automatically” apply to contempt proceedings in non-bankruptcy forums.