**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>PATRICK JOSEPH GAVIN,<br>　　　　　Debtor. | BAP No. NC-21-1130-SGB<br><br>Bk. No. 3:21-bk-30260 |
| NIMER MASSIS; JENNIFER NUSHWAT,<br>　　　　　Appellants,<br>v.<br>PATRICK JOSEPH GAVIN,<br>　　　　　Appellee. | **MEMORANDUM**<sup>*</sup> |

Appeal from the United States Bankruptcy Court
for the Northern District of California
Dennis Montali, Bankruptcy Judge, Presiding

Before: SPRAKER, GAN, and BRAND, Bankruptcy Judges.

### INTRODUCTION

Debtor Patrick Joseph Gavin retained bankruptcy counsel over a

weekend after receiving an adverse tentative ruling in a state court

judgment enforcement action brought by creditors Nimer Massis and

Jennifer Nushwat ("Creditors"). Gavin filed for chapter 13[1] relief to stay

---

  <sup>*</sup> This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

  [1] Unless specified otherwise, chapter and section references are to the Bankruptcy

that proceeding and to prevent the tentative ruling from becoming a final decision. However, Gavin did not qualify for chapter 13, so he quickly sought to convert the case to chapter 11. Creditors opposed conversion, sought dismissal, and moved for sanctions against Gavin and his counsel. The bankruptcy court denied the motions to dismiss and for sanctions and converted the case. Creditors appeal those decisions.

None of Creditors' arguments persuade us that any of the bankruptcy court's rulings should be reversed. Therefore, we AFFIRM.

## FACTS[2]

In 2019, Creditors were granted a state court default judgment for $77,778.25 against Gavin and his son for breach of contract. Creditors struggled to enforce the judgment and contend that Gavin actively resisted their collection efforts.[3] In furtherance of their collection efforts, Creditors in late 2020 and early 2021 sought to compel the sale of Gavin's real property located in Burlingame, California ("Burlingame Property"). Gavin

---

Code, 11 U.S.C. §§ 101–1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] We exercise our discretion to take judicial notice of documents electronically filed in Gavin's bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[3] By way of example, Creditors obtained an assignment of rents order entitling them to collect rents from Gavin's rental properties, but they only managed to collect $4,600 before his bankruptcy filing. Creditors contend that in 2020 Gavin collected $99,480 in rents in violation of the state court's assignment of rents order. But Creditors did not present these allegations as part of their court papers in any of the three matters before the bankruptcy court, so we decline to consider them.

opposed Creditors' effort and commenced a new lawsuit to challenge the default judgment and the underlying transaction alleging fraud.

On Friday, April 2, 2021, the state court issued a tentative ruling proposing to enter an order for the sale of the Burlingame Property. The hearing on the sale order application was set for the following Monday, April 5, 2021. Over the weekend, Gavin retained Arasto Farsad to file an emergency "skeletal" chapter 13 bankruptcy petition on Gavin's behalf. According to Farsad, Gavin had contacted him at the "last minute." Consequently, in order to protect and preserve Gavin's rights, and given the limited financial information he had received from Gavin at the time, he determined that filing the chapter 13 petition was the best course of action. Farsad filed Gavin's bankruptcy petition on Easter Sunday, April 4, 2021. As Farsad further explained:

> I had little to no possibility of access to the Debtor that weekend due to the holiday and also because the Debtor was / still is recovering from a recent surgery. It was quite difficult to both obtain and review the necessary documents in a careful manner in order to determine the Debtor's eligibility for a Chapter 13.

Farsad Decl. (April 9, 2021) at ¶ 2.

The state court received notice of the bankruptcy filing. On Monday, April 5, 2021, the state court acknowledged the automatic stay and declined to enter an order for the sale of the Burlingame Property.

Less than a week after Gavin commenced his bankruptcy case, he moved to convert the case from chapter 13 to chapter 11. Farsad stated in

3

his declaration in support of the motion that he filed the chapter 13 petition based on the exigent circumstances and limited information he was confronted with over the preceding weekend. With the opportunity to further review Gavin's financial situation over the next few days Farsad explained that he had determined Gavin exceeded the chapter 13 debt eligibility limits set forth in § 109(e). Accordingly, Gavin sought to convert his case to chapter 11 for the purpose of reorganizing his debts. Gavin noticed the conversion motion and provided the opportunity to request a hearing to the mailing matrix, which included Creditors' counsel.

Creditors opposed the conversion motion. They argued that Gavin's ineligibility for chapter 13 in violation of § 109(e) resulted in a void bankruptcy filing. Creditors considered Gavin's petition to be a nullity and of no legal effect. As a result, Creditors insisted that there was no pending bankruptcy case to convert. Creditors further maintained that the unauthorized emergency filing of a skeletal chapter 13 petition constituted an abuse of process.

Based on the opposition, Gavin noticed a hearing on the conversion motion for May 19, 2021.

On April 20, 2021, Creditors moved to dismiss the bankruptcy case and for annulment of the automatic stay. They simultaneously moved for sanctions under Rule 9011 against both Farsad and Gavin. Based on Farsad's admissions in his declaration in support of the conversion motion, Creditors argued that the skeletal filing of the chapter 13 petition for which

Gavin was not eligible was done solely to stay the state court from issuing the sale order. Creditors maintained this constituted an abuse of process. They argued that this conduct justified dismissal of the bankruptcy case under § 1307(c), annulment of the automatic stay, and imposition of Rule 9011 sanctions.[4]

In further support of the sanctions motion, Creditors presented emails exchanged between their counsel, George Wynns, and Farsad on April 5 and 6, 2021, discussing the bankruptcy filing. Wynns advised Farsad in the first email that Gavin's secured debt greatly exceeded the § 109(e) limit and asserted that the bankruptcy case needed to be dismissed because Gavin was not eligible for chapter 13. Wynn also complained that the estimate of assets set forth in the petition as between "0 and $50,000" was obviously incorrect given the several encumbered parcels of real property Gavin owned. Farsad responded that because of the emergency nature of the filing he had not had the opportunity to follow his usual intake procedures and financial review. But he also stated that if Wynns was correct that Gavin exceeded the chapter 13 debt limits, he intended to move to convert the case to chapter 11.

In the final email exchanged during that time, Wynns opined that there is no provision of the Bankruptcy Code permitting an emergency chapter 13 petition filing when the debtor is not qualified to file a chapter

---

[4] Because Creditors' appeal does not concern denial of stay annulment, there is no need for us to address that issue.

13 petition under § 109(e). Wynns also provided specific information regarding Gavin's real property and the liens encumbering that property. According to Wynns, the secured debt exceeded $2,000,000.

Wynns further disagreed that the pending sale order qualified as an emergency. He pointed out that even if the sale order had been entered on April 5, 2021, no actual sale was imminent. Wynns stated his belief that any such sale would not have occurred for at least another one or two months because the Sheriff would have needed to receive the signed sale order and issue proper notice.

Wynns also executed a declaration in support of the sanctions motion. Wynns' declaration provided detailed information regarding the four parcels of real property Gavin owned and the numerous liens against those properties. He also detailed his efforts to enforce the Creditors' judgment against Gavin and how those judgment enforcement efforts directly led to the chapter 13 petition filing.

The motions to dismiss and for sanctions were scheduled to be heard together with Gavin's conversion motion on May 19, 2021.

On May 4, 2021, Gavin filed his schedules and statement of financial affairs ("SOFA") and a proposed chapter 13 plan. According to the schedules, Gavin had $6,687,280 in real property assets and $91,602 in personal property assets. He also listed $4,432,187 in secured debt, and $183,358 in general unsecured claims. His Schedule I listed $23,382 in monthly income and $6,280 in monthly expenses.

6

Gavin also opposed Creditors' motions. Gavin emphasized that he had no history of prior bankruptcy filings. And as soon as his counsel confirmed that his secured debt exceeded the eligibility limits for chapter 13, his counsel filed the motion to convert the case to chapter 11 within five days of his Easter Sunday emergency bankruptcy filing. Under these circumstances, Gavin maintained that he did not file for bankruptcy relief in bad faith and there was no cause for dismissal within the meaning of § 1307(c). According to Gavin, none of the traditional indicia of bad faith were present.

As for his opposition to the Rule 9011 sanctions motion, Gavin maintained that his emergency chapter 13 petition was neither frivolous nor filed for an improper purpose. Gavin insisted that given the time constraints, his counsel did the best he could with the limited financial information before him to file his bankruptcy petition under an appropriate chapter. Though the information included with the petition significantly undervalued Gavin's assets, he explained that his counsel did not intentionally underrepresent the value of his assets. According to Gavin, the petition preparation program automatically ticked the box for "0-$50,000" in assets because of the skeletal nature of his initial petition filing. Gavin observed that in the interim he had filed his schedules and SOFA, which contained more complete and more accurate financial information.

On May 18, 2021, the bankruptcy court entered an order taking all three matters off calendar and disposing of them without a hearing. The

7

court granted the motion to convert and denied the motions to dismiss and for sanctions. According to the bankruptcy court, § 1307(d) specifically contemplated conversion to chapter 11 when debtors who initially file chapter 13 do not fall within § 109(e)'s debt limits.

As for the motions to dismiss and for sanctions, the bankruptcy court denied them because the chapter 13 petition was filed under "pressing circumstances" — on the eve of the state court sale order hearing. The court rejected the argument that counsel's selection of the wrong chapter to file under was grounds for dismissal of the case or for sanctions given that counsel acted promptly to correct his error. The court also pointed out that Gavin made the corrections before Creditors suffered any prejudice or acted to their detriment. The court found particularly significant Creditors' inability to explain how they would have been in any more favorable situation if Gavin had originally filed a chapter 11 petition instead of mistakenly seeking relief under chapter 13.

On May 28, 2021, Creditors timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.[5]

---

[5] Arguably, all three rulings on appeal are interlocutory. To the extent they are, we hereby grant leave to appeal under Rule 8004(d) and the standards for granting leave to appeal enunciated in *Roderick v. Levy (In re Roderick Timber Co.)*, 185 B.R. 601, 604-05 (9th Cir. BAP 1995).

**ISSUES**

1. Did the bankruptcy court abuse its discretion when it denied Creditors' dismissal motion?

2. Did the bankruptcy court abuse its discretion when it granted Gavin's conversion motion?

3. Did the bankruptcy court abuse its discretion when it denied Creditors' sanctions motion?

4. Did the bankruptcy court commit reversible error by deciding the matters on appeal without holding a hearing?

**STANDARDS OF REVIEW**

We review the bankruptcy court's order denying the dismissal motion for an abuse of discretion. *See Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth)*, 455 B.R. 904, 914 (9th Cir. BAP 2011). We also review for an abuse of discretion the bankruptcy court's decision on Gavin's § 1307(d) motion to convert to chapter 11. *See In re Lester*, 409 B.R. 364, 371–72 (Bankr. W.D. Va. 2009). Orders regarding Rule 9011 sanctions likewise are reviewed for an abuse of discretion. *Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 18 (9th Cir. BAP 2003); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("an appellate court should apply an abuse of discretion standard in reviewing all aspects of a district court's [Civil] Rule 11 determination.").

The bankruptcy court abuses its discretion if it applies an incorrect legal rule or its factual findings are illogical, implausible, or without

support in the record. *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc).

Ordinarily, the bankruptcy court's assessment of the debtor's good faith or bad faith in filing a petition is a question of fact reviewed under the clearly erroneous standard. *Ho v. Dowell (In re Ho)*, 274 B.R. 867, 870 (9th Cir. BAP 2002). However, when the historical facts are undisputed and the bankruptcy court is called upon merely to determine whether the debtor's conduct amounts to good faith or bad faith, this Panel reviews the matter de novo as a mixed question of law and fact. *See Mendoza v. Curry (In re Duque)*, BAP No. CC-05-1069-MaMcB, 2005 WL 6960181, at *3 n.8 (9th Cir. BAP Dec. 30, 2005) (citing *Villanueva v. Dowell (In re Villanueva)*, 274 B.R. 836, 840 (9th Cir. BAP 2002)).

## DISCUSSION

**A.    The bankruptcy court did not abuse its discretion when it denied Creditors' motion to dismiss.**

Creditors first argue that the bankruptcy court should have granted their motion to dismiss. The dismissal motion focused almost exclusively on Farsad's Easter Sunday petition filing and his admission within days that Gavin's secured debt exceeded § 109(e)'s eligibility limit. At the time of the filing, debtors could reorganize under chapter 13 only if they had less than $1,257,850 in secured debt. Because Gavin's secured debt substantially exceeded the allowed limit in chapter 13, Gavin had to file a motion to convert or dismiss. According to Creditors, these facts established that

10

Gavin's petition filing was an abuse of the bankruptcy process and constituted cause for dismissal as a bad faith bankruptcy filing.

A chapter 13 petition which is filed in bad faith may constitute "cause" for dismissal under § 1307(c). *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224 (9th Cir. 1999); *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir. 1994). "To determine if a petition has been filed in bad faith courts are guided by the standards used to evaluate whether a plan has been proposed in bad faith." *In re Eisen*, 14 F.3d at 470. In making both determinations, a bankruptcy court needs to review the "totality of the circumstances." *Id.* However, cause under § 1307(c) does not mandate dismissal. Rather, courts still are required to consider whether dismissal or conversion is in the best interests of the creditors and the estate. *See Nelson v. Meyer (In re Nelson)*, 343 B.R. 671, 675 (9th Cir. BAP 2006). And though courts may not compel chapter 13 debtors to convert to chapter 11, § 1307(d) expressly provides such a right.

In *Leavitt*, the Ninth Circuit held that, when considering whether a chapter 13 case should be dismissed because it was filed in bad faith, the bankruptcy court should consider, among other factors:

> (1) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his chapter 13 petition or plan in an inequitable manner;
> (2) the debtor's history of filings and dismissals;
> (3) whether the debtor intended to defeat state court litigation; and
> (4) whether egregious behavior is present.

11

*In re Leavitt*, 171 F.3d at 1224 (cleaned up).

Creditors, here, contend that all of the *Leavitt* factors except for a history of bankruptcy filings and dismissals are met by Gavin's and Farsad's conduct. According to them, it is "obvious" from the course of events that the sole purpose of the bankruptcy filing was to defeat or impede Creditors' judgment collection efforts. As evidence, they point to the eleventh-hour bankruptcy filing, the decision to seek relief under chapter 13, Gavin's ineligibility for relief under that chapter, and the resulting motion to convert the case to chapter 11. From this, Creditors conclude that Gavin and Farsad unfairly manipulated the Bankruptcy Code, intended to defeat state court litigation, and engaged in egregious conduct. We disagree.

An eleventh-hour bankruptcy filing on the eve of a potentially decisive hearing in state court is not by itself sufficient to find bad faith. *See In re Ho,* 274 B.R. at 876 (bankruptcy court inappropriately dismissed chapter 13 case based on "the timing of Debtor's filing, just prior to the establishment of a trial date by the state court for the litigation"). Many bankruptcy cases are filed on the eve of adverse events such as foreclosure or the imminent entry of a judgment. Debtors do so for the financial breathing space that bankruptcy provides. This inherently delays the payment of creditors and alone is insufficient to sustain a finding of bad faith. As one bankruptcy court has explained:

Filing a bankruptcy petition with the intent to frustrate creditors does not by itself establish an absence of intent to seek rehabilitation. Indeed, because a major purpose behind our bankruptcy laws is to afford a debtor some breathing room from creditors, it is almost inevitable that creditors will, in some sense, be "frustrated" when their debtor files a bankruptcy petition. In reality, there is a considerable gap between delaying creditors, on the eve of foreclosure, and the concept of abuse of judicial purpose.

*In re Marshall*, 298 B.R. 670, 681 (Bankr. C.D. Cal. 2003) (quoting *Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 228 (2d Cir. 1991)). In other words, "[n]ot every 'litigation strategy' or delay caused by the filing of a Chapter 13 case constitutes cause for dismissal when the debtor demonstrates legitimate rehabilitative intent or underlying interests of creditors that might be served through the Chapter 13 case." Keith M. Lundin, Lundin on Chapter 13, § 152.5, at ¶ [7], LundinOnChapter13.com (last visited March 10, 2022) ("Lundin").

Nor is the mistaken filing of the bankruptcy petition under chapter 13 specifically probative of bad faith under the totality of circumstances presented here. Contrary to Creditors' argument, Gavin was qualified to file for bankruptcy relief — just not under chapter 13. Creditors nonetheless insist that he misrepresented his eligibility for chapter 13. But for what purpose? There are degrees of misrepresentations. The bankruptcy court viewed Farsad's filing under the wrong chapter as an "innocent mistake." Not every mistake is nefarious.

Here, the court's finding that Farsad mistakenly placed Gavin into the wrong chapter is supported by the record. On a holiday weekend, Gavin represented to Farsad that pressing circumstances necessitated a bankruptcy filing without any meaningful opportunity for Farsad to review his financial situation. Additionally, Farsad corrected the mistaken filing within five days by filing the motion to convert the case to chapter 11. Finally, as the bankruptcy court observed, there is no evidence that Gavin gained any advantage by initially filing the petition under chapter 13, nor were Creditors harmed in any way by the filing under the wrong chapter. Significantly, Creditors have never explained why they would have been in any different or better position if Farsad had originally filed Gavin's skeletal petition as a chapter 11 petition.

We agree with the bankruptcy court that neither the timing of the filing of the petition, nor the mistaken decision to seek relief under chapter 13, are indicative in this instance of unfair manipulation of the Bankruptcy Code, an intention to defeat state court litigation, or egregious circumstances.[6] Creditors have not effectively challenged the underlying

---

[6] During oral argument, the parties confirmed that Gavin has currently proposed a plan that anticipates payment of all his creditors' claims in full, with interest, to which Creditors have not objected. As has been stated, "perhaps the best indicator of [a] Debtor's good faith" is his or her willingness to propose a plan that will treat his or her creditors fairly and equitably. *In re James*, 260 B.R. 498, 516 (Bankr. D. Idaho 2001); *see also In re Brown*, Case No. 05-49114, 2009 WL 565032, at *4-5 (Bankr. E.D. Tex. Mar. 5, 2009) (making similar observation); *In re Privitera*, Case No. 03-14601DWS, 2003 WL 21460027, at *1 n.8 (Bankr. E.D. Pa. June 12, 2003) ("The Debtor's performance in this bankruptcy case is the best evidence of his good faith in filing this petition.").

circumstances as found by the bankruptcy court. They simply attach deeper and sinister significance to these facts. But the prism through which they see these facts does not render the court's findings and inferences erroneous. Indeed, they are well supported by the record. Accordingly, we are not persuaded that the bankruptcy court abused its discretion by denying Creditors' motion to dismiss.

**B.     The bankruptcy court did not abuse its discretion when it granted Gavin's motion to convert.**

Creditors next argue that because Gavin was ineligible to be a chapter 13 debtor, his bankruptcy petition was null and void. Thus, they believe that the bankruptcy court "lacked jurisdiction" over the matter. They argue that because Gavin did not qualify for chapter 13, there was no valid bankruptcy case to convert.

Several decisions have held that § 109(e) is jurisdictional. *See, e.g.*, *Ekeke v. United States*, 133 B.R. 450, 452 (S.D. Ill. 1991); *In re Wulf*, 62 B.R. 155, 158 (Bankr. D. Neb. 1986), *overruled by Rudd v. Laughlin*, 866 F.2d 1040, 1041 (8th Cir. 1989). These cases would seemingly support Creditors' argument. But the vast majority of decisions addressing the issue — including two from this panel — have concluded that § 109(e) is not jurisdictional. *See, e.g.*, *Duplessis v. Valenti (In re Valenti)*, 310 B.R. 138, 147–48 (9th Cir. BAP 2004) (citing *FDIC v. Wenberg (In re Wenberg)*, 94 B.R. 631, 637 (9th Cir. BAP 1988), *aff'd*, 902 F.2d 768 (9th Cir. 1990)); *see also In re Bello*, 609 B.R. 695, 703 (Bankr. E.D. Mich. 2019) (stating that when the chapter 13

15

debtor is determined to be ineligible under § 109(e), court still has the power either to dismiss the case or convert it to another chapter under the Code); Lundin, § 9.5, at ¶ [5] & n.10; § 146.1, at ¶ [5] & nn.9, 10 & 11 (listing additional cases). We view ourselves as bound by our prior decisions. *Salomon N. Am. v. Knupfer (In re Wind N' Wave)*, 328 B.R. 176, 181 (9th Cir. BAP 2005). Following *Valenti* and *Wenberg,* we hold that § 109(e) is not jurisdictional and that Gavin's ineligibility to be a chapter 13 debtor did not bar the bankruptcy court from converting the case to chapter 11.

As a practical matter, prohibiting a bankruptcy court from exercising subject matter jurisdiction in a case where a debtor's eligibility is at issue would be unworkable in any chapter. More importantly, the non-jurisdictional nature of § 109(e) makes sense because the problem here is not with the bankruptcy filing but with the applicable chapter.[7]

In sum, the Code, the relevant case law, and common sense, militate against Creditors' argument that the bankruptcy court lacked jurisdiction to convert Gavin's chapter 13 case to chapter 11. Consequently, we are not

---

[7] The bankruptcy court's subject matter jurisdiction derives from title 28 and not from any provision of title 11. And the plain language of title 28 specifically grants bankruptcy jurisdiction over *all* cases under title 11. 28 U.S.C. § 1334(a). This is so regardless of whether the debtor is eligible for relief under the particular chapter the petition is filed. Generally speaking, the appropriate remedy for a debtor's ineligibility under chapter 13 is dismissal or conversion, whichever is in the best interests of the creditors and the estate. *See generally* § 1307(c) (providing for dismissal or conversion to chapter 7 for "cause"). Alternately, § 1307(d) permits debtors such as Gavin to voluntarily convert their chapter 13 case to chapter 11 at their election.

16

persuaded that the bankruptcy court abused its discretion by granting Gavin's conversion motion.

## C. The bankruptcy court did not abuse its discretion when it denied Creditors' Rule 9011 sanctions motion.

Creditors additionally argue that the bankruptcy court erred when it denied their Rule 9011 sanctions motion. They claim that Farsad knew or should have known that Gavin did not qualify for chapter 13 based on his secured debt. Again, Creditors rely on Farsad's admission that he did not investigate Gavin's finances before deciding to file his chapter 13 case.

By filing the chapter 13 petition on Gavin's behalf, Farsad was certifying under Rule 9011(b): (1) that it was not filed for an improper purpose; (2) that the petition's legal contentions were warranted by existing law or by a nonfrivolous argument for a change to existing law; and (3) that the factual allegations in the petition had evidentiary support or were likely to have evidentiary support after a reasonable opportunity for investigation or discovery. See Rule 9011(b)(1)-(3); *see also Dressler v. The Seeley Co. (In re Silberkraus),* 336 F.3d 864, 870 (9th Cir. 2003) (describing nature of certifications).

When a party's Rule 9011 certifications turn out to be false, the bankruptcy court may impose sanctions, including reasonable attorney's fees and costs in bringing the sanctions motion. But the moving party must present evidence as to both frivolousness and improper purpose. *See* Rule 9011(c)(2); *In re Silberkraus,* 336 F.3d at 870 & n.5 (citing *Marsch v. Marsch (In*

17

*re Marsch)*, 36 F.3d 825, 830 (9th Cir. 1994)). A filing is frivolous if it is "both baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc). A bankruptcy filing is made for an improper purpose if it is filed "to harass or to cause unnecessary delay or needless increase in the cost of litigation." *In re Silberkraus*, 336 F.3d at 870 (quoting Rule 9011(b)). The assessment of these two factors is considered on a sliding scale "where the more compelling the showing as to one element, the less decisive need be the showing as to the other." *Id.* (quoting *In re Marsch*, 36 F.3d at 830).

The bankruptcy court denied the motion for sanctions for the same reasons it overruled the objections to conversion: Gavin erroneously chose chapter 13 when he filed bankruptcy but promptly remedied that mistake without harm to Creditors. On appeal, Creditors again maintain that Gavin's admitted mistake compels reversal. In short, they focus on the baseless selection of chapter 13 while ignoring the other requirements for sanctions under Rule 9011.

As discussed above, Gavin did not file the *bankruptcy* in bad faith. Rather, he mistakenly selected chapter 13 when he was not qualified for that chapter. The prompt motion to convert to chapter 11 acknowledged and remedied that mistake. This is substantial evidence that it was a mistake resulting from the need to file the bankruptcy over a holiday weekend. An innocent mistake does not equate to an improper purpose.

Creditors' sanctions motion failed wholly to establish an improper purpose.

The question regarding the propriety of Farsad's failure to select the appropriate chapter became a central issue, in large part, because Farsad quickly and candidly acknowledged that Gavin did not qualify for chapter 13. While Creditors established that Farsad's selection of chapter 13 was baseless, they also were required to prove that the filing was "made without a reasonable and competent inquiry." *Townsend*, 929 F.2d at 1362. As the plain language of Rule 9011(b) provides, a filer's certifications are made "to the best of the person's knowledge, information, and belief, **formed after an inquiry reasonable under the circumstances**." (Emphasis added.)

The reasonableness of Farsad's pre-filing inquiry must be measured against what a competent attorney hypothetically would have learned at the same time from a reasonable inquiry. *See Valley Nat'l Bank of Ariz v. Needler (In re Grantham Bros.)*, 922 F.2d 1438, 1442 (9th Cir. 1991); *see also Townsend*, 929 F.2d at 1364 ("whether a pleading is sanctionable must be based on an assessment of the knowledge that reasonably could have been acquired at the time the pleading was filed."). When an attorney must decide whether to file a paper but is confronted with significant time constraints, those time constraints must be considered in determining what constitutes a reasonable inquiry into the facts and the law. *See Homer v.*

*Halbritter*, 158 F.R.D. 236, 238 (N.D.N.Y. 1994) (citing *Cooter & Gell*, 496 U.S. at 401–02).

Not all bankruptcy cases are created equally. As this case illustrates, debtors may wait until the last minute before contacting counsel to file bankruptcy. And debtors are allowed to file for bankruptcy with minimal documentation that must later be supplemented. *See* Rule 1007(a) and accompanying Advisory Committee Notes. Thus, in the context of bankruptcies filed under exigent circumstances, we have generally focused on showings of improper purpose in affirming sanctions orders under Rule 9011. *See McCandless v. U.S. Tr. (In re Carrera)*, BAP No. NC-15-1383-KiTaJu, 2016 WL 4400652, at *8 (9th Cir. BAP Aug. 16, 2016), *aff'd sub nom*. *Vizconde v. Burchard (In re Vizconde)*, 715 F. App'x 630 (9th Cir. 2017) (affirming sanctions orders where bankruptcy court found that emergency chapter 13 bankruptcy petitions were filed solely for the purpose of delay and with no intent to reorganize the debtors). Imposing Rule 9011 sanctions when debtors or their counsel file a bankruptcy petition without an improper purpose under exigent circumstances can carry with it the risk of chilling effective representation and zealous advocacy. *Cf. Radakovich v. Wilson (In re Radakovich)*, BAP No. WW–13–1254–KuPaJu, 2014 WL 4676009, at *5 (9th Cir. BAP Sept. 19, 2014).

Creditors do not contest that courts must take into consideration the circumstances surrounding the filing when evaluating the reasonableness of counsel's inquiry under Rule 9011. Instead, they argue that there was no

emergency. They believe that even if entry of the state court's sale order was imminent, the anticipated sale of the Burlingame Property was not.

Creditors apply an unduly strict reading of the exigent circumstances Farsad faced on Easter weekend in 2021. That Friday, the state court had advised it intended to enter an order to compel the sale of the Burlingame Property at the hearing on the sale motion set for that Monday. After receiving the tentative decision, Gavin contacted Farsad over the weekend to file bankruptcy before the hearing to stay that matter. The bankruptcy court found that the state court matter was pressing and treated it as exigent circumstances. The record supports this finding. Based on Gavin's desire to stay the state court action prior to entry of the order compelling the sale of the Burlingame Property, the court further found that Farsad "did not have sufficient time to obtain and review Debtor's financial documents before then." The record also supports these inferences. Indeed, one of Creditors' first emails to Farsad recognized that "Mr. Gavin was seeking to avoid an imminent court order by the San Mateo County Superior Court that would have ordered the sale of his real property … in satisfaction of the judgment debt."

To be clear, we do not condone the filing of any case without sufficient investigation into a debtor's finances. But the Ninth Circuit has instructed that sanctions under Rule 9011 are measured using a sliding scale. In this instance there is no evidence that Gavin filed his bankruptcy, or selected chapter 13, for an improper purpose. On the other hand, he did

not qualify for chapter 13. And the record is unclear as to exactly what investigation, if any, Farsad conducted before filing the petition with respect to Gavin's eligibility for chapter 13. Ordinarily, this would be substantial evidence supporting frivolousness and imposition of sanctions. But here, the bankruptcy court discounted that evidence in light of the pressing need to file the bankruptcy over the weekend and the evidence that Gavin was recovering from surgery.

It also bears comment that as the bankruptcy court found, Creditors were not harmed by the initial selection of chapter 13. Gavin and Farsad promptly acknowledged the mistake, converted the case to chapter 11, and have proceeded to reorganize. As Judge Jury noted in her concurrence in *Radakovich*, Rule 9011 states that a court **may** impose sanctions for a Rule violation, but it is not required to do so. *In re Radakovich*, 2014 WL 4676009, at \*8 (Jury, J. concurring). The bankruptcy court had considerable discretion to consider the circumstances surrounding that mistake. Despite Farsad's error in filing Gavin's bankruptcy under chapter 13, the bankruptcy court found the absence of improper purpose sufficient to deny sanctions given the circumstances surrounding the failure to realize Gavin's ineligibility. This is not error or an abuse of discretion.

**D.    The bankruptcy court did not commit reversible error by not holding a hearing on the matters on appeal.**

Finally, Creditors argue that the bankruptcy court should have held a hearing on the conversion, dismissal, and sanctions motions. They point

out that the relevant Code sections governing the conversion and dismissal motions require "notice and a hearing." *See* § 1307(c), (d). Additionally, Rule 9011 motions qualify as contested matters and thus similarly require "reasonable notice and opportunity for hearing." *See* Rule 9014(a). Creditors believe that these notice requirements are jurisdictional and that the bankruptcy court's decision to decide the three motions without a hearing deprived them of due process. They are incorrect.

In bankruptcy cases, adequate notice and adequate opportunity for hearing generally are flexible concepts that depend on the circumstances of the particular case. *See* § 102(1)(A).[8] This flexible approach to determining adequate notice and opportunity for hearing is consistent with the constitutional requirements of due process:

> [a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information and it must afford a reasonable time for those interested to make their appearance.

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The

---

[8] In relevant part § 102(1)(A) (1) provides: "'after notice and a hearing', or a similar phrase . . . means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances . . . ."

fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.").

Notwithstanding Creditors' arguments to the contrary, the standard for what amounts to constitutionally adequate notice is relatively minimal. Notice is constitutionally sufficient as long as it apprises the interested parties of the pending matter and affords them a reasonable opportunity to present their position. *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1202 (9th Cir. 2008) (citing *Mullane*, 339 U.S. at 314, 70 S. Ct. 652), *aff'd*, 559 U.S. 260 (2010).

Here, Creditors clearly had notice of Gavin's conversion motion and the opportunity to respond and file their own motions. In short, they complain that they were denied the opportunity to appear for oral argument. There is no indication that they sought an evidentiary hearing.[9] Nor have Creditors argued that there were any disputed material facts. Where the material facts are undisputed, no evidentiary hearing is required. *Caviata Attached Homes, LLC v. U.S. Bank, Nat'l Ass'n, (In re Caviata Attached Homes, LLC)*, 481 B.R. 34, 45-46 (9th Cir. BAP 2012) (bankruptcy

---

[9] When asked at oral argument on the appeal, Creditors' counsel candidly conceded that he did not know whether they would have attempted to provide additional evidence. As the bankruptcy court took the hearings off calendar the day before they were scheduled for argument, this rings hollow. Regardless, Creditors have not identified any evidence that they were prevented from presenting to the bankruptcy court on any motion.

court properly dismissed chapter 11 case without conducting an evidentiary hearing where there were no disputed material facts).

Creditors fail to explain or demonstrate how the bankruptcy court's reliance on the parties' papers deprived them of a full and fair opportunity to be heard. Absent from the record is any indication of what they might have done differently. Creditors have not said what would have changed if the bankruptcy court had not disposed of the matters by its May 18, 2021 order but instead had waited until after the hearing scheduled for the next day to issue the same order.

When, as here, there is no indication in the record that the absence of additional process prejudiced the litigants or otherwise deprived them of a fair opportunity to be heard, the decision on appeal cannot be reversed on due process grounds. *See Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 776 (9th Cir. 2008), *partially abrogated on other grounds as recognized in Nichols v. Marana Stockyard & Livestock Mkt., Inc. (In re Nichols)*, 10 F.4th 956, 962 (9th Cir. 2021).

Accordingly, we reject as meritless Creditors' argument challenging the order on appeal based on an alleged lack of due process.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's order granting Gavin's conversion motion and denying Creditors' dismissal and sanctions motions.

25